UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **FAUSTINO PABLO PABLO,** § <br> § <br> *Petitioner*, § <br> § <br> v. § <br> § <br> **TODD M. LYONS,** *in his official capacity* § <br> as Acting Director of U.S. Immigration and § <br> Customs Enforcement, U.S. Department of § <br> Homeland Security; **DAREN K.** § <br> **MARGOLIN,** *in his official capacity* as § <br> Director of Executive Office for Immigration § <br> Review; **KRISTI NOEM**, *in her official* § <br> *capacity* as Secretary of U.S. Department of § <br> Homeland Security; **PAMELA BONDI,** *in* § <br> *her official capacity* as Attorney General of § <br> the United States; and **WARDEN of ERO** § <br> **El Paso Camp East Montana in El Paso,** § <br> **Texas,** *in his or her official capacity*; § <br> § <br> *Respondents*. § | **EP-25-CV-00566-DCG** |

### ORDER GRANTING PRELIMINARY INJUNCTION

Before the Court is Petitioner Faustino Pablo Pablo's "Emergency Motion for Temporary Restraining Order Ordering Petitioner's Return to the United States" (ECF No. 5). The Court **GRANTS** the Motion **IN PART** and **DIRECTS** Respondents to return Pablo Pablo to the United States no later than **December 12, 2025, at 11:59 PM MST**.

I.  BACKGROUND

Faustino Pablo Pablo ("Pablo Pablo") is a Guatemalan citizen who, in 2012, fled violence in his native country to seek asylum in the United States.[1] Pablo Pablo applied for admission in Hidalgo, Texas, where he was subsequently detained by border patrol agents and determined removable by an Immigration Judge ("IJ").[2] However, the IJ found that Pablo Pablo had "shown it is more likely than not that he will be tortured by, or with the consent or acquiescence of, the Guatemalan government"[3] and granted his application for withholding of removal under the Convention Against Torture.[4] In effect, Pablo Pablo would remain subject to removal to a "third country" *other* than Guatemala.[5]

In 2013, United States Immigration and Customs Enforcement ("ICE") released Pablo Pablo under an order of supervision ("OSUP").[6] Pablo Pablo lived in California for more than a decade after his release from ICE custody, subject to the condition that he "report to immigration

---

[1] *See* Pet., ECF No. 1, at 7 ("[Pablo Pablo] is a native and citizen of Guatemala and no other country").

*See also* IJ Decision, ECF No. 1-1, at 9 (describing violence enacted by Guatemalan "security force" upon Pablo Pablo and his family); *id.* at 18 ("[T]he Court finds [Pablo Pablo] has shown it is more likely than not that he will be tortured by, or with the consent or acquiescence of, the Guatemalan government.").

[2] *See* IJ Decision, at 1.

[3] *Id.* at 18.

[4] *Id.* at 19 (citing 8 C.F.R. § 1208.16). Pablo Pablo also applied for asylum and withholding of removal pursuant to INA § 241(b)(3), which the IJ denied. *See id.*

[5] *See* 8 CFR § 208.16(f) ("Nothing in this section or § 208.17 shall prevent the Service from removing an alien to a third country other than the country to which removal has been withheld or deferred.").

[6] *See* Pet., at 8.

officials periodically." [7] Pablo Pablo complied and reported to the Enforcement and Removal Operations ("ERO") component of ICE from 2014 to 2025.[8]

On November 5, 2025, ICE detained Pablo Pablo at a "regular check-in appointment"[9] without notice or explanation.[10] Pablo Pablo's attorney promptly contacted ICE to share, *inter alia*, receipt of his withholding of removal to Guatemala.[11] On November 17, 2025, the Enforcement and Removal Operations ("ERO") component of ICE transported Pablo Pablo to El Paso, Texas, "for staging of removal to Guatemala."[12]

Pablo Pablo filed a petition with this Court, seeking a writ of habeas corpus under 28 U.S.C. § 2241 and challenging both his (1) revocation of release and (2) subsequent detention.[13] On November 20, 2025, he filed an additional motion, asking that Respondents be enjoined from transferring him outside of the Western District of Texas during the pendency of his habeas petition.[14] The same day, at 5:00 AM MST, ICE transported Pablo Pablo to the airport.[15] At 6:00

---

[7] Decl., ECF No. 10-1, at 2.

[8] *Id.*

[9] First Mot. TRO, ECF No. 3, at 3. *See also* Advisory, ECF No. 10, at 1.

[10] Pet., at 8 ("[H]e was given no notice of ICE's intention to re-detain him, and he was not provided with any information about why his OSUP was presumably revoked.").

[11] *Id.*

[12] Decl., at 3.

[13] Pet., at 10–12 (bringing statutory, administrative, and constitutional claims).

[14] First Mot. TRO, at 13–14. Counsel for Pablo Pablo states that "[s]he notified the U.S. Attorney of the motion" and that they discussed their respective positions on the motion. Second Mot. TRO, ECF No. 5, at 2.

[15] Second Mot. TRO, at 2.

AM, ICE placed him on a flight direct to Guatemala.[16] By the time the Court ordered Respondents not to remove Pablo Pablo,[17] he had arrived in Guatemala City.[18] Through counsel, Pablo Pablo filed a second motion for emergency relief—this time, asking that Respondents "facilitate his return to the United States within fewer than 20 days"[19]—and a motion seeking civil contempt and sanctions against Respondents.[20]

The Court ordered the parties to appear for a status conference on December 3, 2025, to clarify the factual record and determine next steps.[21] Respondents conceded that Pablo Pablo "was subject to withholding of removal to Guatemala at the time he was removed, and therefore the physical removal was unlawful."[22] To rectify the error, Respondents stated that Pablo Pablo's return flight had been "tentatively scheduled" for December 4, 2025.[23] On December 4, 2025, Respondents provided an update that "Petitioner was not returned to the United States."[24] As far as the Court is aware, Pablo Pablo currently remains in Guatemala.

---

[16] *See id.*; *see also* Decl., at 3.

[17] Order Preventing Removal, ECF No. 4, at 6.

[18] 1st Advisory, ECF No. 10, at 1.

[19] Second Mot. TRO, at 6.

[20] *See generally* ECF No. 7

[21] Order Sched. Status Conf., ECF No. 8, at 3.

[22] Status Conference Recording, 02:18:00–02:26:00 (Dec. 3, 2025) (recording available upon request). *See also* Decl., at 1 (stating that ICE "mistakenly" and "wrongfully" removed Pablo Pablo to Guatemala).

[23] 1st Advisory, at 1.

[24] 2d Advisory, ECF No. 14, at 1 (emphasis added).

## II.  DISCUSSION

### a. Jurisdiction

Respondents previously suggested that because they no longer "have actual custody or control over Petitioner," this Court "lacks jurisdiction in the habeas framework" to order Pablo Pablo's return to the United States.[25] However, Respondents have since independently committed to facilitate his return.[26] Thus, it is not clear whether their position on the Court's jurisdiction has changed. Regardless, the Court finds that it retains subject matter jurisdiction.[27] For reasons squarely outside of Pablo Pablo's control, his attention has shifted from challenging his *detention* to challenging the blatant lawlessness of his *removal*.[28] In other words, "[t]he removal itself lies at the heart of the wrongs."[29] Therefore, the Court need not untangle the "thorny question of 'custody' as it pertains to [Pablo Pablo's] habeas claim."[30]

---

[25] 1st Advisory, at 1–2. *See also* Resp., ECF No. 9, at 2–3 (stating the same).

[26] 1st Advisory, at 1.

[27] *See Noem v. Abrego Garcia*, 145 S. Ct. 1017, 1018 (2025) (affirming that the district court properly ordered the Government to "facilitate" the return of a person who had been deported in violation of a withholding order).

[28] Habeas claims are not mutually exclusive from all other claims. *See, e.g.*, *R.I.L.-R v. Johnson*, 80 F. Supp. 3d 164, 185-86 (D.D.C. 2015) ("APA and habeas claims may coexist.").

[29] *Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 511 (D. Md. 2025).

[30] *Id.* It bears mentioning that although this Order refers to Pablo Pablo as "Petitioner" (as in the habeas context), this is done for the sake of consistency and clarity.

### b. Preliminary Injunction

A preliminary injunction is an extraordinary remedy to be granted upon "a clear showing that the plaintiff is entitled to relief."[31] To obtain a preliminary injunction, Pablo Pablo must establish that:

(1)     he is likely to succeed on the merits;

(2)     he is likely to suffer irreparable harm in the absence of preliminary relief;

(3)     the balance of equities tips in his favor, and

(4)     that an injunction is in the public interest.[32]

Pablo Pablo clears each bar.[33]

First, as to likelihood of success on the merits, Respondents' counsel conceded that the removing Pablo Pablo to Guatemala was "unlawful." This is correct—Pablo Pablo has already shown in immigration court that "it is more likely than not that he will be tortured by, or with the consent or acquiescence of, the Guatemalan government."[34] On that basis, the IJ granted Pablo Pablo's application for a withholding of removal under 8 U.S.C. § 1231(a).[35] The effect of Pablo Pablo's withholding of removal is clear: the Government "may not" remove him to Guatemala.[36]

---

[31] *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008).

[32] *See Winter*, 555 U.S. at 20 (citing cases).

[33] The present Motion is styled as both an "Emergency Motion for Preliminary Injunction or Temporary Restraining Order" and an "Emergency Motion for Temporary Restraining Order." *See* Second Mot. TRO, at 1. Recognizing that the conditions under which the Motion was filed necessitated haste, the Court construes it as the former.

[34] *See* IJ Decision, at 18.

[35] *Id.* at 19.

[36] *See* 8 U.S.C. § 1231(a); *see also Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 516 (D. Md. 2025) ("[P]ursuant to Section 1231(b)(3)(A), once an alien is granted withholding of removal, the Defendants 'may not' remove the alien to the identified country.").

Having done so, Respondents have violated 8 U.S.C. § 1231(a). Pablo Pablo is likely to succeed on the merits of this claim.[37]

Next, Pablo Pablo has plainly shown that he will be irreparably harmed in the absence of preliminary injunctive relief. "[T]he risk of torture, beatings, and even death clearly and unequivocally supports a finding of irreparable harm."[38] Further, he "does not have sufficient cash" and "has nowhere to go"[39] in a country where he faces these grave risks.

Finally, the third and fourth factors "merge when the Government is the opposing party."[40] Concerning the balance of equities, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'"[41] In Pablo Pablo's case, the pot*ential risk to his bodily safety, coupled with the losses he has already experienced from his deprivation of liberty, steeply outweigh the costs to the Government in facilitating his flight home. As to the public interest, the Court "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."[42] "Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."[43]

---

[37] While Pablo Pablo does not expressly cite 8 U.S.C. § 1231(a), he argues that he is likely to succeed on the merits because Respondents "violat[ed] the Immigration Judge's Grant of Withholding of Removal." *See* Second Mot. TRO, at 4. The Court therefore construes Pablo Pablo's motion as seeking relief for Respondents' violation of 8 U.S.C. § 1231(a).

[38] *J.G.G. v. Trump*, 772 F. Supp. 3d. 18, 42 (D.D.C. 2025).

[39] Second Mot. TRO, at 3.

[40] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

[41] *Winter*, 555 U.S. at 24.

[42] *Id.*

[43] *Nken*, 556 U.S. at 436.

Having carefully considered each *Winter* factor, the Court finds that preliminary relief is necessary to restore the status quo and to preserve Pablo Pablo's access to due process in accordance with the Constitution and relevant immigration statutes.

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** the "Emergency Motion for Temporary Restraining Order Ordering Petitioner's Return to the United States" (ECF No. 5) to the extent it **ORDERS** Respondents to facilitate the return of Faustino Pablo Pablo to the United States by **no later than December 12, 2025 at 11:59 PM MST**.

The Court **DENIES IN PART** the "Emergency Motion for Temporary Restraining Order Ordering Petitioner's Return to the United States" (ECF No. 5) to the extent Pablo Pablo asked the Court to order his return in "less than 20 days."[44]

The Court **ORDERS** Respondents to file **daily updates** (*i.e.*, by 5:00 PM MST on every business day) confirming what steps have been taken to facilitate Pablo Pablo's return to the United States. These must include declarations from individuals with personal knowledge of the steps taken *or* to be taken to facilitate Pablo Pablo's return.

The Court **ORDERS** counsel for Pablo Pablo to facilitate the implementation of this Order by all means available (*e.g.*, sharing Pablo Pablo's location, status, and contact information with Respondents).

The Court **ORDERS** Respondents to transmit this Order to all relevant officers, agents, and employees under their control and with responsibility in this matter.

Finally, the Clerk **SHALL** serve copies of this Order on all named Respondents.

---

[44] Second Mot. TRO, ECF No. 5, at 6 (filed on November 20, 2025, and requesting that Pablo Pablo be returned "in less than 20 days").

**So ORDERED and SIGNED this 5th day of December 2025.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**