**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **FAUSTINO PABLO PABLO,** | § | |
| | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DAVID J. VENTURELLA,** *in his official* | § | |
| *capacity as* Senior Official Performing the | § | |
| Duties of the Director of U.S. Immigration | § | |
| and Customs Enforcement; | § | |
| **DAREN K. MARGOLIN,** *in his official* | § | |
| *capacity as* Director of Executive Office for | § | |
| Immigration Review; | § | **EP-25-CV-00566-DCG** |
| **MARKWAYNE MULLIN,** *in his official* | § | |
| *capacity as* Secretary of U.S. Department of | § | |
| Homeland Security; | § | |
| **TODD BLANCHE,** *in his official capacity* | § | |
| *as* Acting Attorney General of the | § | |
| United States; and | § | |
| **WARDEN OF ERO EL PASO CAMP** | § | |
| **EAST MONTANA,** *in his or her official* | § | |
| *capacity*, | § | |
| | § | |
| | § | |
| *Respondents*. | § | |

## TEMPORARY RESTRAINING ORDER

Petitioner Faustino Pablo Pablo moves for a temporary restraining order ("TRO")

"prohibiting Respondents from deporting him without procedural safeguards" or "transferring

him to another jurisdiction during the pendency of this habeas petition."[1]  For the reasons

explained below, the Court will grant "Petitioner's Motion for Temporary Restraining Order"

(ECF No. 50) while it assesses whether further injunctive relief is appropriate.

---

[1] *See* TRO Mot., ECF No. 50, at 12.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF
system, rather than the cited document's internal pagination.

## I.    Introduction

The salient issue here is whether the screening procedures set forth in a March 2025 Department of Homeland Security memorandum (the "March 2025 Guidance") satisfy the Government's obligations under 8 U.S.C. § 1231(b)(3) and the Convention Against Torture ("CAT"). [2]  At bottom, Section 1231(b)(3) and CAT prohibit the Government from removing aliens to countries where they may be persecuted or tortured.[3]  And, ordinarily, aliens are entitled to Immigration Judge ("IJ") review where they claim fear of persecution or torture in the designated country of removal.[4]

The applicable procedures are less clear when the Government plans to remove an alien to a country other than the one designated in their removal order.  That's because, in such a scenario, "there is no [specific] process under the [Immigration and Nationality Act or associated regulations] for a noncitizen to raise a fear-based claim."[5]

---

[2] *See* Mar. 2025 Guidance, ECF No. 34-3.

[3] *See* 8 U.S.C. § 1231(b)(3)(A) (providing that the Government "may not remove an alien to a country if [the Government] decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion"); 8 U.S.C. § 1231 Note ("United States Policy With Respect to Involuntary Return of Persons in Danger of Subjection to Torture") ("It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.").

[4] *See, e.g.*, 8 C.F.R. § 208.16 (withholding of removal during removal proceedings); *id.* § 208.31 (withholding-only proceedings for aliens who either (1) were ordered removed in expedited proceedings, or (2) had their removal orders reinstated).

*See also Kassye v. Mullin*, No. 1:26-CV-1648 (RDA/LRV), 2026 WL 1832368, at *7 (E.D. Va. June 24, 2026) ("[I]n almost all . . . circumstances where an alien raises a potential credible fear of removal to a particular country, there is review by an immigration judge.").

[5] *Mbaba v. Perez*, No. 5:26-CV-00070, 2026 WL 917484, at *8 (S.D. Tex. Feb. 13, 2026).

The March 2025 Guidance purportedly answers what processes apply for this class of aliens. That Guidance provides (in relevant part) that, "where [such] an alien affirmatively states a fear [of removal], [U.S. Citizenship and Immigration Services ("USCIS")] . . . will determine whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal."[6] The Guidance further provides that "[i]f USCIS determines that the alien has not met this standard, the alien will be removed" without an opportunity to seek IJ review.[7]

Petitioner is such an alien who (1) was previously ordered removed but (2) whom the Government plans to remove to a country—in this case, Mexico—that wasn't designated by his removal order.[8] In December 2025, the Government referred Petitioner to USCIS to screen him under the procedures set forth in the March 2025 Guidance.[9] USCIS returned a negative fear determination,[10] and the Government now plans to remove Petitioner to Mexico without any further proceedings.[11]

Petitioner argues that the screening process set forth under the March 2025 Guidance is inadequate to satisfy the Government's obligations under Section 1231(b)(3) and CAT.[12]

---

[6] Mar. 2025 Guidance at 2.

[7] *Id.*

[8] *See generally* Removal Order, ECF No. 1-1 (lacking reference to Mexico as the designated country for Petitioner's removal); *see also* Resp'ts' Status Report, ECF No. 43 (indicating that the Government plans to remove Petitioner to Mexico).

[9] Resp'ts' Suppl. Br., ECF No. 49, at 1, 3.

[10] *See* Resp'ts' Am. Resp., ECF No. 34, at 3.

[11] *See* Resp'ts' Status Report ("[The Government] does not foresee additional procedural hurdles to removing Petitioner to Mexico." (citation modified)).

[12] *See generally* TRO Mot.

According to Petitioner, the March 2025 Guidance lacks various "procedural safeguards"—including the lack of IJ review—that deprive him of a meaningful opportunity to seek withholding of removal.[13]  He further argues that his removal to Mexico would be unlawful absent those procedural safeguards.[14]

Although the Court might ordinarily hold a hearing before ruling on an issue like this, swifter action is necessary here.  The Court previously ordered Respondents not to remove or transfer Petitioner while this case is pending,[15] but that Order will automatically vacate on July 10, 2026 at 11:59 P.M. Mountain Time.[16]  In other words, tonight.  For the reasons explained below, the Court finds it appropriate to temporarily restrain Respondents from removing Petitioner from the United States while the Court considers whether further injunctive relief is appropriate.

## II.    Discussion

### A.    Jurisdiction

The Court has already determined that it has jurisdiction to consider requests to enjoin removal where an alien claims that the Government failed to properly screen them for

---

[13] *See id*. at 7–8.

[14] *See id*. at 5–6.

[15] *See* Order Show Cause, ECF No. 4, at 6.

[16] *See* Order Partially Vacating Order Show Cause, ECF No. 46, at 4.

withholding of removal.[17]   Rather than reproduce that analysis here, the Court directs the parties

to the jurisdictional discussion in its "Order Preliminarily Enjoining Respondents from

Removing Petitioner Pending Withholding of Removal Determination" in *Zawu Roberts v. De*

*Anda-Ybarra*.[18]

### B.    Temporary Restraining Order

Having determined that it retains jurisdiction, the Court now turns to Petitioner's request

for a TRO.  Under Federal Rule of Civil Procedure 65, a TRO is "simply a highly accelerated

and temporary form of preliminary injunctive relief, which requires that the party seeking such

relief establish the same four elements for obtaining a preliminary injunction."[19]  "The purpose

of a TRO is to preserve the status quo and prevent irreparable harm until the court makes a final

decision on injunctive relief."[20]

To prevail, the movant must prove that:

(1)    they are likely to succeed on the merits;

(2)    they are likely to suffer irreparable harm in the absence of preliminary relief;

---

[17] *See Zawu Roberts v. De Anda-Ybarra*, No. EP-26-CV-00377-DCG, 2026 WL 1459725, at *8 (W.D. Tex. May 22, 2026).

Petitioner also requests that the Court enjoin Respondents from transferring him.  *See* TRO Mot. at 12.  Given the time constraints, *see supra* Section I, and jurisdictional complexities associated with enjoining transfer, this Order focuses only on Petitioner's request to enjoin his removal.

[18] *Id.*

[19] *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 644–45 (N.D. Tex. 2021) (citation modified); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (establishing elements for obtaining a preliminary injunction).

[20] *Mahdejian v. Bradford*, No. 9:25-CV-00191, 2025 WL 2269796, at *2 (E.D. Tex. July 3, 2025) (citing *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974)).

(3)      the balance of equities tips in their favor, and

(4)      that a TRO is in the public interest.[21]

Temporary restraining orders are "extraordinary relief and rarely issued."[22]  In those rare cases, "every restraining order must state the reasons why it issued; state its terms specifically; and describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required."[23]

### 1.      Likelihood of Success

The Court begins with the first TRO prong, which requires Petitioner to demonstrate a likelihood of success on the merits.  This is "the most important" factor in the TRO analysis.[24]

Preliminarily, there is at least some question as to what "the merits" are for the purposes of this Motion.  In other (non-habeas) contexts, courts have determined that "[t]he relevant inquiry of whether [a litigant has] shown a likelihood of success on the merits is whether they are likely to prevail on the causes of action they assert in their complaint."[25]  Because this is a habeas action, the ultimate relief that Petitioner seeks is his release from custody.[26]  Thus, to

---

[21] *See Winter*, 555 U.S. at 20.

[22] *E.g.*, *Albright v. City of New Orleans*, 46 F. Supp. 2d 523, 532 (E.D. La. 1999).

[23] FED. R. CIV. P. 65(d)(1).

[24]  *See Mock v. Garland*, 75 F.4th 563, 587 n.50 (5th Cir. 2023).

[25] *See Bermudez v. SN Servicing Corp.*, No. 2:22-CV-01246-KJM-DB, 2022 WL 4280168, at *2 (E.D. Cal. Sept. 15, 2022); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (determining that "new assertions of mistreatment that are entirely different from the claim raised and the relief requested" in a complaint "cannot provide the basis for a preliminary injunction" (citing *Stewart v. I.N.S.,* 762 F.2d 193, 198–99 (2d Cir. 1985))).

[26] *See generally* Pet., ECF No. 1.

prevail on the Motion under the typical TRO framework, Petitioner would have to show a likelihood that the Court will grant his release.

Some district courts have resolved requests to enjoin *removal* by evaluating whether the underlying *detention* claim is substantially likely to succeed on its merits.[27]  Others, however, have focused on whether an alien's *removal* would be lawful, with the rationale that "removal—not detention—is the matter for which [the petitioner] seeks a stay."[28]  This Court is persuaded that the relevant claim should match the requested remedy.  Thus, the Court will consider whether Petitioner has a substantial likelihood of success on his claim that the Government may not remove him unless and until it affords him certain procedural safeguards.

Aliens are plainly entitled to an opportunity to seek withholding under Section 1231(b)(3) and CAT.[29]  But, as noted above, neither the INA nor its regulations specifically address what that "opportunity" must entail.[30]  Courts across the country, however, have determined that due

---

[27] *See, e.g.*, *Espinoza-Sorto v. Agudelo*, No. 1:25-CV-23201-GAYLES, 2025 WL 3012786, at *6 (S.D. Fla. Oct. 28, 2025); *Molina Marquez v. Catletti*, No. CV 26-0390, 2026 WL 372175, at *1 (W.D. La. Feb. 10, 2026); *Zapata v. Hernandez*, No. C26-1214-KKE, 2026 WL 1078055, at *1 (W.D. Wash. Apr. 21, 2026); *Chavez v. Noem*, No. 2:26-CV-00161-RJS, 2026 WL 686782, at *3 (D. Utah Mar. 11, 2026).

[28] *Munoz v. Trump*, No. 5:25-CV-217-BJB, 2026 WL 688123, at *2 (W.D. Ky. Mar. 11, 2026); *see also, e.g.*, *Juarez v. Noem*, No. 2:26-CV-00801-DC-CKD (HC), 2026 WL 799976, at *7 (E.D. Cal. Mar. 23, 2026).

[29] *See, e.g.*, *Thanga v. Gonzales*, 162 F. App'x 295, 298 (5th Cir. 2006) ("An alien may apply for withholding of removal under [8 U.S.C. § 1231(b)(3)]."); *Zhu v. Gonzales*, 493 F.3d 588, 596 (5th Cir. 2007) (explaining that "withholding of removal is not discretionary"); *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002) (explaining that aliens are "entitled to a reasonably fair opportunity to apply for . . . Convention Against Torture protection." (citing *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir. 1981))).

[30] *See supra* note 5 and accompanying text.

process requires the Government to give aliens like Petitioner the opportunity to seek IJ review of negative fear determinations.[31]

The Court finds those decisions persuasive and consistent with the due process balancing framework set forth in *Mathews v. Eldridge*.[32] **First**, the private interest at stake—avoiding removal to a country where it is more likely than not that one will be persecuted or tortured—is self-evident.[33] **Second**, the risk of erroneous deprivation is substantial when fear claims are resolved without any opportunity for adversarial testing of credibility or legal error before an IJ.[34] **Third**, while the Government has legitimate interests in administrative efficiency and prompt execution of removal orders, those interests do not outweigh the marginal burdens

---

[31] *See, e.g.*, *Kassye*, 2026 WL 1832368, at *7 (determining that alien had a "due process right to [IJ] review of any claim of his fear of removal to a third country"); *Mbaba*, 2026 WL 917484, at *7–10; *L.R. v. Noem*, 826 F. Supp. 3d 1252, 1271 (D. Nev. 2026) ("[T]he Court holds that Petitioner has a due process right to receive meaningful notice and an opportunity to have his fear-based claim fully adjudicated before an immigration judge before DHS can deport him to Mexico, or any other third country."); *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1069, 1073 (W.D. Wash. 2025) (determining that the procedures set forth under the March 2025 Guidance violate due process and requiring the Government to allow alien to seek IJ review of "adverse [reasonable fear] determination"); *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 549 (D. Md. 2025) ("Petitioner has a substantial likelihood of success on his claim that the Due Process Clause entitles him to review by an immigration judge of the asylum officer's negative reasonable fear determination.").

*But see Gutierrez de Guerra v. Warden, Port Isabel Serv. Processing Ctr.*, No. 1:26-CV-327, 2026 WL 1179777, at *5 (S.D. Tex. Apr. 30, 2026) (determining that the procedures set forth in the March 2025 Guidance "compl[y] with the requirements of the Fifth Amendment").

[32] *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The undersigned has applied the *Mathews* framework in other immigration habeas-related contexts. *See, e.g.*, *Zamudio Sanchez v. Noem*, No. EP-25-CV-00403-DCG, 2026 WL 596133, at *11–15 (W.D. Tex. Mar. 2, 2026). The Court sees no reason to depart from that practice here.

[33] *See, e.g.*, *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1012 (S.D. Tex. 2025) (concluding that petitioner's interest in "hav[ing] his removal withheld from a country where he [was] more likely than not to be persecuted" was "significan[t]" and "weigh[ed] heavily in favor of a robust due process requirement").

[34] *See, e.g.*, *Cruz Medina v. Noem*, 806 F. Supp. 3d at 549–50.

associated with providing IJ review of negative fear determinations[35]—particularly given that IJ review is already required in analogous contexts.[36]

For these reasons, the Court concludes that Petitioner is likely to succeed in arguing that the Government may not lawfully remove him without allowing him to seek IJ review of USCIS's negative fear determination.[37]  The first *Winter* factor therefore tips in Petitioner's favor.

### 2.   Substantial Threat of Irreparable Harm

The Court next considers whether Petitioner has shown a substantial threat of irreparable harm. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages."[38]

As explained above, Petitioner desires a meaningful opportunity to seek withholding of removal to Mexico under Section 1231(b)(3) and CAT.[39]  The purpose of the withholding process is to prevent the Government from removing aliens to countries where it is more likely than not that they will be "persecuted or tortured."[40]  For that reason, the threat of irreparable

---

[35] *See, e.g.*, *id.* at 550.

[36] *See, e.g.*, 8 C.F.R. §§ 208.16, 208.31.

[37] In his Motion, Petitioner identifies several other "procedural safeguards" that he argues the March 2025 Guidance lacks.  *See* TRO Mot. at 7–8.  Because the lack of IJ review is independently sufficient to temporarily restrain Respondents from removing him, the Court need not address those arguments yet.

[38] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

[39] *See generally* TRO Mot.

[40] *See supra* notes 3–4 and accompanying text.

harm in this case "is clear and simple: persecution, torture, and death."[41]  The Court finds that

legal remedies would be inadequate to "undo" these types of harm.[42]

The second *Winter* factor therefore also tips in Petitioner's favor.

### 3.      Balance of Hardships and Public Interest

Finally, the third and fourth factors "merge when the Government is the opposing

party,"[43] as is true here.  Concerning the balance of equities, "courts must balance the competing

claims of injury and must consider the effect on each party of the granting or withholding of the

requested relief."[44]  As to the public interest, the Court "should pay particular regard for the

public consequences in employing the extraordinary remedy of [a TRO]."[45]  "Of course there is a

public interest in preventing aliens from being wrongfully removed, particularly to countries

where they are likely to face substantial harm."[46]  Conversely, "[t]here is always a public interest

in prompt execution of removal orders."[47]

---

[41] *Mahdejian*, 2025 WL 2269796, at *4 (citing cases); *see also Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury.").

[42] *See, e.g.*, *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 759 F. Supp. 1339, 1352 (W.D. Wis. 1991) (concluding that "assaults, batteries[,] and harassment" "cannot be remedied by monetary damages").

[43] *Nken v. Holder*, 556 U.S. 418, 435 (2009); *see also Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023) (applying the same "merging" rule in the preliminary injunction context).

[44] *Winter*, 555 U.S. at 24 (citation modified).

[45] *Id.*

[46] *Nken*, 556 U.S. at 436.

[47] *Id.*

Here, Petitioner is in a particularly vulnerable position of being subject to removal to a country where he hasn't been given a meaningful opportunity to seek withholding of removal.[48] Moreover, while the Court acknowledges the "public interest in prompt execution of removal orders," that doesn't mean the Government can neglect its obligations under Section 1231(b)(3) or CAT. Indeed, the public interest in allowing Petitioner to seek withholding protection outweighs what little legitimate interest the Government has (if any) in sidestepping its humanitarian obligations.[49]

The equities and public interest factors therefore tip in Petitioner's favor as well.

*****

Having carefully considered each *Winter* factor, the Court finds that Petitioner has made a sufficient showing to justify temporarily preserving the status quo while the Court considers whether a preliminary injunction is appropriate.[50] The Court will therefore order Respondents to temporarily refrain from removing Petitioner (as detailed below).[51]

---

[48] *See supra* Section II.B.1.

[49] *See Sagastizado*, 802 F. Supp. 3d at 1016; *Nken v. Holder*, 556 U.S. 418, 436 (2009) ("Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.").

*See also State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (stating that there is "generally no public interest in the perpetuation of unlawful agency action").

[50] *See Granny Goose*, 415 U.S. at 439.

[51] *See infra* Section III.

In the meantime, the Court will order Respondents to file a brief in response to Petitioner's Motion.[52]  Depending on Respondents' brief, the Court may either rule on the papers or set an in-person hearing to further flesh out the issues.

### III.     Conclusion

For the reasons stated above, the Court **GRANTS** Petitioner's "Motion for Temporary Restraining Order" (ECF No. 50) **IN PART** to the extent it seeks a temporary restraining order prohibiting Respondents from removing Petitioner from the United States.

The Court thereby **TEMPORARILY RESTRAINS** Respondents from removing Petitioner from the United States until (1) **Friday, July 17, 2026 at 11:59 P.M. Mountain Time**; *or* (2) the Court orders otherwise.  The Court will not require Petitioner to provide monetary security for the TRO at this time.[53]

The Court **VACATES** its "Order Vacating Order Prohibiting Petitioner's Removal or Transfer" (ECF No. 46) to the extent that Order would permit Respondents to remove Petitioner from the United States **after July 10, 2026 at 11:59 P.M. Mountain Time**.

The Court **RESERVES RULING** on the "Motion for Temporary Restraining Order" (ECF No. 50) to the extent it requests that the Court enjoin Respondents from "transferring

---

[52] *See infra* Section III.

[53] *See* FED. R. CIV. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (explaining that "the court 'may elect to require no security at all'" (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978))).

*See also, e.g.*, *Serrato v. Quinones*, No. 6:26-CV-599-JSS-LHP, 2026 WL 904687, at *5 (M.D. Fla. Apr. 2, 2026) (declining to require alien to provide monetary security for preliminary injunction prohibiting his transfer).

[Petitioner] to another jurisdiction during the pendency of this habeas petition."  Nothing in this Order shall be construed to prohibit Respondents from transferring Petitioner to another facility **after July 10, 2026 at 11:59 P.M. Mountain Time**—as the Court's "Order Vacating Order Prohibiting Petitioner's Removal or Transfer" (ECF No. 46) permits.

The Court further **ORDERS** that by **Wednesday, July 15, 2026**, Respondents must **FILE** a **BRIEF** responding to the factual allegations and legal arguments that Petitioner made in his Motion.  Petitioner **MAY FILE** a **REPLY** by **Thursday, July 16, 2026**.

The Court **ORDERS** Respondents to transmit this Order to all relevant officers, agents, and employees under their control and with responsibility in this matter.

Finally, the Clerk **SHALL** serve copies of this Order on all named Respondents.

**So ORDERED and SIGNED this 10th day of July 2026.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

- 13 -