**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **FAUSTINO PABLO PABLO,** | § | |
| | § | |
| ***Petitioner***, | § | |
| **v.** | § | |
| | § | |
| **DAVID J. VENTURELLA,** *in his official* | § | |
| *capacity as* Senior Official Performing the | § | |
| Duties of the Director of U.S. Immigration | § | |
| and Customs Enforcement; | § | |
| **DAREN K. MARGOLIN,** *in his official* | § | |
| *capacity as* Director of Executive Office for | § | |
| Immigration Review; | § | **EP-25-CV-00566-DCG** |
| **MARKWAYNE MULLIN,** *in his official* | § | |
| *capacity as* Secretary of U.S. Department of | § | |
| Homeland Security; | § | |
| **TODD BLANCHE,** *in his official capacity* | § | |
| *as* Acting Attorney General of the | § | |
| United States; and | § | |
| **WARDEN OF ERO EL PASO CAMP** | § | |
| **EAST MONTANA,** *in his or her official* | § | |
| *capacity*, | § | |
| | § | |
| ***Respondents***. | § | |

## ORDER PRELIMINARILY ENJOINING RESPONDENTS FROM REMOVING PETITIONER PENDING IMMIGRATION JUDGE REVIEW

Before the Court are three motions:

(1)    Petitioner Faustino Pablo Pablo's "Motion for Temporary Restraining Order" (ECF No. 50) (the "TRO Motion");[1]

---

[1] *See generally* 2d TRO Mot., ECF No. 50.  Though the Motion states that Petitioner seeks a temporary restraining order ("TRO"), *see* 2d TRO Mot. at 1, the Court construes his request as seeking a preliminary injunction.  As explained below, a TRO preserves the status quo until a court determines whether a preliminary injunction is appropriate, whereas a preliminary injunction preserves the status quo until a court can resolve a case on its merits.  *See infra* Section II.A.  The scope of relief that Petitioner requests in his Motion indicates that he seeks the latter rather than merely the former.  So too does the fact that both parties have had the opportunity to file briefs and advocate for their positions.  *See, e.g., Perez*

(2)     Petitioner's "Ex-Parte Emergency Motion for Preliminary Injunction or Temporary Restraining Order" (ECF No. 3) (the "Prior TRO Motion");[2] and

(3)     Petitioner's "Motion to Issue Decision" (ECF No. 45).[3]

For the reasons explained below, the Court:

(1)     **GRANTS** the TRO Motion (ECF No. 50) **IN PART** to the extent it asks the Court to enjoin Respondents from removing him without following certain procedures, but **DENIES** the TRO Motion (ECF No. 50) in all other respects.

(2)     **DENIES** the Prior TRO Motion (ECF No. 3); and

(3)     **DENIES** the "Motion to Issue Decision" (ECF No. 45).

## I.     Introduction

### A.     Legal Background

The salient issue here is whether the screening procedures set forth in a March 2025 Department of Homeland Security memorandum (the "March 2025 Guidance") satisfy the Government's obligations under 8 U.S.C. § 1231(b)(3) and the Convention Against Torture ("CAT"). [4]  At bottom, Section 1231(b)(3) and CAT prohibit the Government from removing aliens to countries where they may be persecuted or tortured.[5]  And, ordinarily, aliens are entitled

---

*Hernandez v. Noem*, No. EDCV 26-1121 JGB (AJRX), 2026 WL 822527, at *2 (C.D. Cal. Mar. 19, 2026) ("Because both parties have had an opportunity to file briefs, the Court construes the Application for a TRO as a motion for preliminary injunction.").

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the cited document's internal pagination.

[2] *See* 1st TRO Mot., ECF No. 3.

[3] *See* Mot. Issue Decision, ECF No. 45.

[4] *See* Mar. 2025 Guidance, ECF No. 34-3.

[5] *See* 8 U.S.C. § 1231(b)(3)(A) (providing that the Government "may not remove an alien to a country if [the Government] decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political

to Immigration Judge ("IJ") review where they claim fear of persecution or torture in the designated country of removal.[6]

The applicable procedures are less clear when the Government plans to remove an alien to a country other than the one designated in their removal order.  In such a scenario, "there is no [specific] process under the [Immigration and Nationality Act or associated regulations] for a noncitizen to raise a fear-based claim."[7]

The March 2025 Guidance purportedly answers what processes apply for this class of aliens.  That Guidance provides (in relevant part) that, "where [such] an alien affirmatively states a fear [of removal], [U.S. Citizenship and Immigration Services ("USCIS")] . . . will determine whether the alien would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal."[8]  The Guidance further provides that "[i]f USCIS determines that the alien has not met this standard, the alien will be removed" without an opportunity to seek IJ review.[9]

---

opinion"); 8 U.S.C. § 1231 Note ("United States Policy With Respect to Involuntary Return of Persons in Danger of Subjection to Torture") ("It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.").

[6] *See, e.g.*, 8 C.F.R. § 208.16 (withholding of removal during removal proceedings); *id.* § 208.31 (withholding-only proceedings for aliens who either (1) were ordered removed in expedited proceedings, or (2) had their removal orders reinstated).

*See also Kassye v. Mullin*, No. 1:26-CV-1648 (RDA/LRV), 2026 WL 1832368, at *7 (E.D. Va. June 24, 2026) ("[I]n almost all . . . circumstances where an alien raises a potential credible fear of removal to a particular country, there is review by an immigration judge.").

[7] *Mbaba v. Perez*, No. 5:26-CV-00070, 2026 WL 917484, at *8 (S.D. Tex. Feb. 13, 2026).

[8] Mar. 2025 Guidance at 2.

[9] *Id.*

## B.    Procedural History

Petitioner is such an alien who (1) was previously ordered removed but (2) whom the Government plans to remove to a country—in this case, Mexico—that wasn't designated by his removal order.[10]  In December 2025, the Government referred Petitioner to USCIS to screen him under the procedures set forth in the March 2025 Guidance.[11]  USCIS returned a negative fear determination,[12] and the Government now plans to remove Petitioner to Mexico without any further proceedings.[13]

On July 9, 2026, Petitioner moved to enjoin the Government from removing or transferring him, arguing that the screening process set forth under the March 2025 Guidance is inadequate to satisfy the Government's obligations under Section 1231(b)(3) and CAT.[14] According to Petitioner, the March 2025 Guidance lacks various "procedural safeguards"—such as IJ review—that deprive him of a meaningful opportunity to seek withholding of removal.[15] He further argues that his removal to Mexico would be unlawful absent those procedural safeguards, and that the Court should order his release.[16]

---

[10] *See generally* Removal Order, ECF No. 1-1 (lacking reference to Mexico as the designated country for Petitioner's removal); *see also* Resp'ts' Status Report, ECF No. 43 (indicating that the Government plans to remove Petitioner to Mexico).

[11] Resp'ts' Suppl. Br., ECF No. 49, at 1, 3.

[12] *See* Resp'ts' Am. Resp., ECF No. 34, at 3.

[13] *See* Resp'ts' Status Report ("[The Government] does not foresee additional procedural hurdles to removing Petitioner to Mexico." (citation modified)).

[14] *See generally* 2d TRO Mot.

[15] *See id*. at 7–8.

[16] *See id*. at 5–6, 9.

- 4 -

On July 10, 2026, the Court issued an order temporarily restraining the Government from removing Petitioner until at least 11:59 p.m. Mountain Time on July 17, 2026.[17]  The purpose of that temporary restraining order ("TRO") was to preserve the status quo and allow Respondents to respond before the Court decided whether to issue a preliminary injunction.[18]  Respondents opposed the Motion on July 15, 2026,[19] and Petitioner replied on July 16, 2026.[20]

## II.      Discussion

### A.      Motion for Temporary Restraining Order (ECF No. 50)

The Court must decide whether to issue a preliminary injunction.[21]  Whereas TROs preserve the status quo until the court can conduct a preliminary-injunction hearing,[22] preliminary injunctions preserve the status quo until the court can resolve a case on its merits.[23]

---

[17] *See* TRO, ECF No. 51.

[18] *See id*. at 4.

[19] *See* Resp'ts' Opp., ECF No. 52.

[20] *See* Pet'r's Reply, ECF No. 53.

[21] *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 443 (1974) ("Where a hearing on a preliminary injunction has been held after issuance of a temporary restraining order, and where the District Court decides to grant the preliminary injunction, the appropriate procedure is not simply to continue in effect the temporary restraining order, but rather to issue a preliminary injunction, accompanied by the necessary findings of fact and conclusions of law.").

[22] *See id.* at 438–39.

[23] *See Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 326 (5th Cir. 1997) ("Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition so far as possible until after a full hearing permits final relief to be fashioned."); *see also Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) ("[A preliminary injunction's] purpose is merely to preserve the relative positions of the parties until a trial on the merits can be held.").

Preliminary injunctions are "extraordinary" remedies that are "never awarded as of right."[24]

Like for a TRO, obtaining a preliminary injunction requires movants to show that:

(1)    they are likely to succeed on the merits;

(2)    they are likely to suffer irreparable harm in the absence of preliminary relief;

(3)    the balance of equities tips in their favor, and

(4)    that a preliminary injunction is in the public interest.[25]

These are commonly known as the "*Winter* factors."[26]

Petitioner requests that the Court (1) enjoin his removal; (2) enjoin his transfer; and (3) order his release.[27]  The Court will analyze these requests in turn.

### 1.    Petitioner's Request to Enjoin Removal

#### a.    Jurisdiction

Citing 8 U.S.C. § 1252(g) and the Supreme Court's analysis in *DHS v. Thuraissigiam*,[28] Respondents argue that the Court doesn't have jurisdiction to entertain requests to enjoin removal.[29]  The Court, however, has already determined neither Section 1252(g) nor other

---

[24] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).

[25] *See Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009) (quoting *Speaks v. Kruse*, 445 F.3d 396, 399–400 (5th Cir. 2006)); *see also Winter*, 555 U.S. at 20.

*See also Sanders v. Fitch*, No. 1:23CV105-MPM-RP, 2023 WL 7782922, at *1 (N.D. Miss. Nov. 15, 2023) (observing that "the same criteria govern the issuance of preliminary injunctions and temporary restraining orders").

[26] *See, e.g.*, *Price v. Texas Tech Univ. Health & Scis. Ctr. El Paso*, 784 F. Supp. 3d 944, 951 (W.D. Tex. 2025).

[27] 2d TRO Mot. at 12.

[28] *See DHS v. Thuraissigiam*, 591 U.S. 103 (2020).

[29] Resp'ts' Opp. at 2–3.

provisions in the Immigration and Nationality Act ("INA") strip the Court of jurisdiction to consider requests to enjoin removal where an alien claims that the Government failed to properly screen them for withholding of removal.[30]  Rather than reproduce that analysis here, the Court directs the parties to the jurisdictional discussion in its "Order Preliminarily Enjoining Respondents from Removing Petitioner Pending Withholding of Removal Determination" in *Zawu Roberts v. De Anda-Ybarra*.[31]

As for *Thuraissigiam*, that case "recognized the proposition that habeas does not extend to aliens seeking 'the opportunity to remain lawfully in the United States.'"[32]  The TRO Motion doesn't ask the Court to allow Petitioner to "remain lawfully in the United States," but instead asks the Court to ensure that the Government observes certain procedures before removing him.[33]  For that reason, *Thuraissigiam* doesn't preclude the Court's review either.

### b.   *Winter* Factors

Having determined that it retains jurisdiction, the Court will now evaluate whether to enjoin Petitioner's removal.

### i.   Likelihood of Success

The Court begins with the first *Winter* factor, which requires Petitioner to demonstrate a likelihood of success on the merits.  This is "the most important" factor in the TRO analysis.[34]

---

[30] *See Zawu Roberts v. De Anda-Ybarra*, No. EP-26-CV-00377-DCG, 2026 WL 1459725, at *8 (W.D. Tex. May 22, 2026).

[31] *Id.*

[32] *Kassye*, 2026 WL 1832368, at *5 n.5 (citing *Thuraissigiam*, 591 U.S. at 119–20).

[33] *See id*.

[34] *See Mock v. Garland*, 75 F.4th 563, 587 n.50 (5th Cir. 2023).

Preliminarily, there is at least some question as to what "the merits" are for the purposes of this Motion. In other (non-habeas) contexts, courts have determined that "[t]he relevant inquiry of whether [a litigant has] shown a likelihood of success on the merits is whether they are likely to prevail on the causes of action they assert in their complaint."[35] Because this is a habeas action, the ultimate relief that Petitioner seeks is his release from custody.[36] Thus, to prevail on the Motion under the typical TRO framework, Petitioner would have to show a likelihood that the Court will grant his release.

Some district courts have resolved requests to enjoin *removal* by evaluating whether the underlying *detention* claim is substantially likely to succeed on its merits.[37] Others, however, have focused on whether an alien's *removal* would be lawful, with the rationale that "removal—not detention—is the matter for which [the petitioner] seeks a stay."[38] This Court is persuaded that the relevant claim should match the requested remedy. Thus, the Court will consider whether Petitioner has a substantial likelihood of success on his claim that the Government may not remove him unless and until it affords him certain procedural safeguards.

---

[35] *See Bermudez v. SN Servicing Corp.*, No. 2:22-CV-01246-KJM-DB, 2022 WL 4280168, at *2 (E.D. Cal. Sept. 15, 2022); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (determining that "new assertions of mistreatment that are entirely different from the claim raised and the relief requested" in a complaint "cannot provide the basis for a preliminary injunction" (citing *Stewart v. I.N.S.*, 762 F.2d 193, 198–99 (2d Cir. 1985))).

[36] *See generally* Pet., ECF No. 1.

[37] *See, e.g.*, *Espinoza-Sorto v. Agudelo*, No. 1:25-CV-23201-GAYLES, 2025 WL 3012786, at *6 (S.D. Fla. Oct. 28, 2025); *Molina Marquez v. Catletti*, No. CV 26-0390, 2026 WL 372175, at *1 (W.D. La. Feb. 10, 2026); *Zapata v. Hernandez*, No. C26-1214-KKE, 2026 WL 1078055, at *1 (W.D. Wash. Apr. 21, 2026); *Chavez v. Noem*, No. 2:26-CV-00161-RJS, 2026 WL 686782, at *3 (D. Utah Mar. 11, 2026).

[38] *Munoz v. Trump*, No. 5:25-CV-217-BJB, 2026 WL 688123, at *2 (W.D. Ky. Mar. 11, 2026); *see also, e.g.*, *Juarez v. Noem*, No. 2:26-CV-00801-DC-CKD (HC), 2026 WL 799976, at *7 (E.D. Cal. Mar. 23, 2026).

Although aliens are plainly entitled to an opportunity to seek withholding under Section 1231(b)(3) and CAT,[39] neither the INA nor its regulations specifically address what that "opportunity" must entail for aliens like Petitioner.[40]  Respondents, on the one hand, argue that "nothing requires [the Government] to provide Petitioner with more process than what he has already been provided"[41]  Petitioner, on the other, argues that due process demands that the Government allow him to present his fear-based claim to an IJ—as regulations provided for in other contexts.[42]

Courts across the country have determined that due process demands more than what the March 2025 Guidance provides.[43]  The Court finds those decisions persuasive and consistent

---

[39] *See, e.g.*, *Thanga v. Gonzales*, 162 F. App'x 295, 298 (5th Cir. 2006) ("An alien may apply for withholding of removal under [8 U.S.C. § 1231(b)(3)]."); *Zhu v. Gonzales*, 493 F.3d 588, 596 (5th Cir. 2007) (explaining that "withholding of removal is not discretionary"); *Efe v. Ashcroft*, 293 F.3d 899, 903 (5th Cir. 2002) (explaining that aliens are "entitled to a reasonably fair opportunity to apply for . . . Convention Against Torture protection." (citing *Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382 (10th Cir. 1981))).

[40] *I.e.*, those who the Government plans to remove to a country that (1) wasn't listed in the removal order; and therefore (2) wasn't considered during removal proceedings.

*See supra* note 7 and accompanying text.

[41] Resp'ts' Opp. at 1.

*See supra* notes 8–12 and accompanying text.

[42] *See* 2d TRO Mot. at 5–8.

[43] *See, e.g.*, *Kassye*, 2026 WL 1832368, at *7 (determining that alien had a "due process right to [IJ] review of any claim of his fear of removal to a third country"); *Mbaba*, 2026 WL 917484, at *7–10; *L.R. v. Noem*, 826 F. Supp. 3d 1252, 1271 (D. Nev. 2026) ("[T]he Court holds that Petitioner has a due process right to receive meaningful notice and an opportunity to have his fear-based claim fully adjudicated before an immigration judge before DHS can deport him to Mexico, or any other third country."); *Kumar v. Wamsley*, 817 F. Supp. 3d 1059, 1069, 1073 (W.D. Wash. 2025) (determining that the procedures set forth under the March 2025 Guidance violate due process and requiring the Government to allow alien to seek IJ review of "adverse [reasonable fear] determination"); *Cruz Medina v. Noem*, 806 F. Supp. 3d 536, 549 (D. Md. 2025) ("Petitioner has a substantial likelihood of success on

with the due process balancing framework set forth in *Mathews v. Eldridge*.[44]  ***First***, the private interest at stake—avoiding removal to a country where it is more likely than not that one will be persecuted or tortured—is self-evident.[45]  ***Second***, the risk of erroneous deprivation is substantial when fear claims are resolved without any opportunity for adversarial testing of credibility or legal error before an IJ.[46]  ***Third***, while the Government has legitimate interests in administrative efficiency and prompt execution of removal orders, those interests do not outweigh the marginal burdens associated with providing IJ review of negative fear determinations[47]—particularly given that IJ review is already required in analogous contexts.[48]

For these reasons, the Court concludes that Petitioner is likely to succeed in arguing that the Government may not lawfully remove him without allowing him to seek IJ review of

---

his claim that the Due Process Clause entitles him to review by an immigration judge of the asylum officer's negative reasonable fear determination.").

*But see Gutierrez de Guerra v. Warden, Port Isabel Serv. Processing Ctr.*, No. 1:26-CV-327, 2026 WL 1179777, at *5 (S.D. Tex. Apr. 30, 2026) (determining that the procedures set forth in the March 2025 Guidance "compl[y] with the requirements of the Fifth Amendment").

[44] *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

The undersigned has applied the *Mathews* framework in other immigration habeas-related contexts.  *See, e.g.*, *Zamudio Sanchez v. Noem*, No. EP-25-CV-00403-DCG, 2026 WL 596133, at *11–15 (W.D. Tex. Mar. 2, 2026).  The Court sees no reason to depart from that practice here.

[45] *See, e.g.*, *Sagastizado v. Noem*, 802 F. Supp. 3d 992, 1012 (S.D. Tex. 2025) (concluding that petitioner's interest in "hav[ing] his removal withheld from a country where he [was] more likely than not to be persecuted" was "significan[t]" and "weigh[ed] heavily in favor of a robust due process requirement").

[46] *See, e.g.*, *Cruz Medina v. Noem*, 806 F. Supp. 3d at 549–50.

[47] *See, e.g.*, *id.* at 550.

[48] *See, e.g.*, 8 C.F.R. §§ 208.16, 208.31.

USCIS's negative fear determination.[49]  The first *Winter* factor therefore tips in Petitioner's favor.

### ii.    Substantial Threat of Irreparable Harm

The Court next considers whether Petitioner has shown a substantial threat of irreparable harm. "In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages."[50]

As explained above, Petitioner desires a meaningful opportunity to seek withholding of removal to Mexico under Section 1231(b)(3) and CAT.[51]  While Respondents are correct to note that "[t]he execution of a removal order does not categorically cause irreparable harm,"[52] the purpose of the withholding process is to prevent the Government from removing aliens to countries where it is more likely than not that they will be "persecuted or tortured."[53]  For that reason, the threat of irreparable harm in this particular case "is clear and simple: persecution, torture, and death."[54]

---

[49] In his Motion, Petitioner identifies several other "procedural safeguards" that he argues the March 2025 Guidance lacks.  *See* 2d TRO Mot. at 7–8.  Because the lack of IJ review is independently sufficient to temporarily restrain Respondents from removing him, the Court need not address those arguments yet.

[50] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

[51] *See generally* 2d TRO Mot.

[52] Resp'ts' Opp. at 3 (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)) (emphasis omitted).

[53] *See supra* notes 5–6 and accompanying text.

[54] *Mahdejian*, 2025 WL 2269796, at *4 (citing cases); *see also Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury.").

Respondents also argue that "Petitioner has other available remedies to achieve the result he seeks here"—namely, via moving the BIA to reopen his removal proceedings.[55]  In connection with a motion to reopen, Respondents argue that "the BIA . . . may also entertain motions to stay removal."[56]  Those types of stays, however, are "discretionary," and "[t]he mere filing of a motion for a discretionary stay of an order does not prevent the execution of the order."[57]  Considering that the Court has already determined that Petitioner is entitled to a hearing before an IJ, the Court finds this discretionary process inadequate to ensure Petitioner's case is properly reviewed before the Government removes him.  The Court further finds that such a process is inadequate to "undo" the potential harm that Petitioner faces if removed.[58]

The second *Winter* factor therefore also tips in Petitioner's favor.

### iii.    Balance of Hardships and Public Interest

Finally, the third and fourth factors "merge when the Government is the opposing party,"[59] as is true here.  Concerning the balance of equities, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the

---

[55] *See* Resp'ts' Opp. at 3–5.

[56] *Id.* at 5 (citing *EOIR Policy Manual Part III – Chapter 5.3*, Executive Office for Immigration Review, https://www.justice.gov/eoir/policy-manual-eoir/part-III/bia/chapter-5-3 (last visited July 17, 2026) [hereinafter "BIA Discretionary Stay Procedures"].

[57] *See* BIA Discretionary Stay Procedures ("(d) Pending Motions").

[58] *See, e.g.*, *Lac du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 759 F. Supp. 1339, 1352 (W.D. Wis. 1991) (concluding that "assaults, batteries[,] and harassment" "cannot be remedied by monetary damages").

[59] *Nken*, 556 U.S. at 435; *see also Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023) (applying the same "merging" rule in the preliminary injunction context).

requested relief."[60]  As to the public interest, the Court "should pay particular regard for the public consequences in employing the extraordinary remedy of [a TRO]."[61]  "Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm."[62]  Conversely, "[t]here is always a public interest in prompt execution of removal orders."[63]

Here, Petitioner is in a particularly vulnerable position of being subject to removal to a country where he hasn't been given a meaningful opportunity to seek withholding of removal.[64] Moreover, while the Court acknowledges the "public interest in prompt execution of removal orders,"[65] that doesn't mean the Government can neglect its obligations under Section 1231(b)(3) or CAT.  Indeed, the public interest in allowing Petitioner to meaningfully seek withholding protection outweighs what little legitimate interest the Government has (if any) in sidestepping its humanitarian obligations.[66]

The equities and public interest factors therefore tip in Petitioner's favor as well.

*****

---

[60] *Winter*, 555 U.S. at 24 (citation modified).

[61] *Id.*

[62] *Nken*, 556 U.S. at 436.

[63] *Id.*

[64] *See supra* Section II.A.1.b.i.

[65] *See* Resp'ts' Opp. at 5 (quoting *Nken*, 556 U.S. at 436).

[66] *See Sagastizado*, 802 F. Supp. 3d at 1016; *Nken*, 556 U.S. at 436 ("Of course there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm.").

*See also State v. Biden*, 10 F.4th 538, 560 (5th Cir. 2021) (stating that there is "generally no public interest in the perpetuation of unlawful agency action").

Having determined that each *Winter* factor weighs in favor of enjoining the Government from removing Petitioner without providing IJ review of his withholding claims, the Court will now consider what that IJ review must entail.[67]  Petitioner asks the Court to impose a number of "procedural safeguards" including notice requirements, directives on what information the IJ should consider, and an instruction regarding what standard the IJ should apply.[68]

Rather than adopt Petitioner's safeguards, this Court instead finds it appropriate (as other courts have) to "look to the existing regulations [for] substantive guidance as to" what procedures are necessary.[69]  Here, the Court concludes that the procedures set forth under 8 C.F.R. §§ 208.16 and 1208.16 provide the best framework for what IJ review must entail here. These regulations detail the withholding-related procedures that would have applied had the Government designated Mexico for Petitioner's removal during his removal proceedings,[70] and the Court sees no reason that Petitioner shouldn't enjoy those same protections now.

The Court therefore enjoins Respondents from removing Petitioner from the United States until they allow him to seek IJ review of his withholding claims in the manner prescribed by 8 C.F.R. §§ 208.16 and 1208.16.

---

[67] *See, e.g.*, *Missouri v. Biden*, 681 F. Supp. 3d 603, 612 (W.D. La. 2023) ("A Preliminary Injunction must describe in reasonable detail the act or acts restrained or required." (citing FED. R. CIV. P. 65)).

[68] *See* 2d TRO Mot. at 7–8.

[69] *See, e.g.*, *Sagastizado*, 802 F. Supp. 3d at 1011.

[70] *Kassye*, 2026 WL 1832368, at *6 ("Section 208.16 applies to the original withholding of removal proceedings. . . .").

### 2.      Petitioner's Request to Enjoin Transfer

Petitioner next asks the Court to enjoin Respondents from "***transferring*** him to another jurisdiction during the pendency of this habeas petition."[71]  Petitioner argues that, in the absence of a "preliminary injunction preventing his transfer and removal," he will suffer harm from "being removed to a country where he has not been properly screened."[72]

Petitioner doesn't adequately explain why the Court should enjoin Respondents from transferring him to another district.  As described above, the TRO Motion compellingly argues that the Court should enjoin removal by drawing links between each *Winter* factor and the specific relief sought.[73]  The TRO Motion doesn't, however, address whether:

(1)      he is likely to succeed in arguing that the Government may not lawfully ***transfer*** him without allowing him to seek IJ review of USCIS's negative fear determination;

(2)      legal remedies would be inadequate to "undo" harm associated with ***transfer***; *or*

(3)      the equities and public interest tip in favor of preventing his ***transfer***.[74]

---

[71] *See* 2d TRO Mot. at 12 (emphasis added); *see also id.* at 3, 11 (requesting the same).

[72] *See id.* at 3.

[73] *See supra* Section II.A.1.b.

[74] *See generally* 2d TRO Mot.

Because the issue is inadequately briefed, the Court will not consider it.[75]  Accordingly, the

Court denies Petitioner's request to enjoin Respondents from transferring him to another

jurisdiction.[76]

### 3.    Petitioner's Request for Release

Petitioner finally asks the Court to order "his immediate release from custody."[77]

However, "a court cannot render [the] ultimate relief sought in a habeas petition—releasing a

detainee—in the form of a preliminary injunction or TRO."[78]  The Court therefore denies

Petitioner's request for release.[79]

---

[75] *See, e.g.*, *S.E.C. v. Sunbelt Dev. Corp.*, No. Civ. A. 97-1387, 2006 WL 519769, at *5 (W.D. La. Mar. 2, 2006) ("A court may decline to address an argument that is not adequately briefed." (quoting *In re HECI Exploration Co.,* 862 F.2d 513, 525 (5th Cir. 1988))).

[76] 2d TRO Mot. at 12.

[77] *E.g.*, *id.* at 3.

[78] *Saechao v. Noem*, No. 3:26-CV-0624, 2026 WL 602783, at *1 (N.D. Tex. Mar. 4, 2026).

*See also, e.g.*, *Ortega v. U.S. Immigr. & Customs Enf't*, No. 6:26-CV-00865, 2026 WL 776600, at *1 (W.D. La. Mar. 18, 2026) (explaining that courts must deny motions for TROs that "seek the same relief" as a pending habeas petition, because, otherwise, the motion for "immediate release would function as a form of accelerated review, circumventing the habeas process" (citation modified)); *Cano Alvarez v. S. La. ICE Processing Ctr.*, No. 26-0696, 2026 WL 660752, at *1 (W.D. La. Mar. 9, 2026) ("The Petitioner's request for immediate release is improper because one cannot skip the line by dressing a habeas petition in TRO clothes.").

*Cf.* Pet. at 20–21 (requesting, in part, that "Respondents release Petitioner" or "provide a bond hearing").

[79] *See* 2d TRO Mot. at 3, 4, 9.

**B.     Ex-Parte Emergency Motion for Preliminary Injunction or Temporary Restraining Order (ECF No. 3)**

At the outset of this case, Petitioner filed an "Ex-Parte Emergency Motion for Preliminary Injunction or Temporary Restraining Order" (ECF No. 3).  In part, the Prior TRO Motion requests substantively identical relief to the TRO Motion discussed above:

(1)     "Enjoin Respondents from *transferring* Mr. Pablo Pablo outside of the Western District of Texas during the pendency of this habeas corpus petition";

(2)     "Enjoin Respondents from *removing* Mr. Pablo Pablo to any third country during the pendency of this habeas proceeding";

(3)     Maintain the status quo during the pendency of this habeas corpus petition by ordering Mr. Pablo Pablo's *immediate release* from detention."[80]

The Court denies those requests as moot.[81]

Next, Petitioner asks the Court to order his "immediate return to this District" *if* he "has already been transferred" to a facility beyond the Western District of Texas.[82]  As far as the

---

[80] 1st TRO Mot. at 13–14 (emphases added).

[81] Like the recent TRO Motion, the Prior TRO Motion does not explain why the Court should enjoin Respondents from transferring Petitioner (as distinct from removing Petitioner). *Compare* 1st TRO Mot. at 5–14 (grounding analysis of *Winter* factors in removal, not transfer), *with* 2d TRO Mot. at 4–11.

[82] *See* 1st TRO Mot. at 14.

record reflects, Petitioner remains at El Paso Service Processing Center in El Paso, Texas.[83] The

Court therefore denies this request.

Finally, Petitioner asks the Court to declare that Respondents have "violated the Fifth

Amendment, of the United States Constitution, 28 U.S.C. § 2241, the APA, and the INA."[84]  The

Court does not (and, for the reasons provided below, cannot[85]) yet reach the merits of the

Petition and thus denies this request.

For these reasons, the Court denies the Prior TRO Motion.

### C.    Motion to Issue Decision (ECF No. 45)

Petitioner separately filed a "Motion to Issue Decision" (ECF No. 45) in which he asks

the Court "to issue a decision in his Petition for Habeas Corpus."[86]  For their part, Respondents

argue that Petitioner's request for a decision on the merits (*i.e.*, that "removal is not foreseeable")

fundamentally contradicts his request for injunctive relief (*i.e.*, that he faces "imminent execution

of a removal order").[87]

---

[83] *See* Solares Decl., ECF No. 23-1, at 1 (indicating that, as of December 12, 2025, Petitioner was "in ICE custody at the El Paso Service Processing Center in El Paso, TX.").

Per the undersigned Judge's Standing Order to Provide Status Updates in Immigration Habeas Cases, the parties were required to tell the Court if and when "the Government transfers the petitioner to a new detention center."  A copy of that Standing Order is available at https://www.txwd.uscourts.gov/ judges-information/standing-orders/.  Neither party has filed a status update containing that information, so the Court proceeds under the assumption that Petitioner is still at the El Paso Service Processing Center.

[84] *See* 1st TRO Mot. at 13.

[85] *See infra* Section II.C.

[86] *See* Mot. Issue Decision at 1.

[87] Resp'ts' Opp. at 2–3.

This Order should resolve that latent contradiction.  If Respondents wish to remove Petitioner to a third country, they must allow Petitioner to seek IJ review of his withholding claims.[88]  After Respondents have been given an opportunity to provide IJ review, the Court will be able to assess whether Petitioner's lawful removal is, in fact, foreseeable.  The Court therefore denies Petitioner's "Motion to Issue Decision" to the extent it seeks an immediate decision on the merits of the Petition.

## III.    Conclusion

For the reasons stated above, the Court **GRANTS** Petitioner's "Motion for Temporary Restraining Order" (ECF No. 50) **IN PART** to the extent it asks the Court to enjoin Respondents from removing him without following certain procedures.  The Court **DENIES** Petitioner's "Motion for Temporary Restraining Order" (ECF No. 50) in all other respects.

The Court thereby **ENJOINS** Respondents from removing Petitioner from the United States until they allow him to seek IJ review of his withholding claims in the manner prescribed by 8 C.F.R. §§ 208.16 and 1208.16.  The Court will not require Petitioner to provide monetary security for the injunction at this time.[89]

---

[88] *See infra* Section III.

[89] *See* FED. R. CIV. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (explaining that "the court 'may elect to require no security at all'" (quoting *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978))).

*See also, e.g.*, *Serrato v. Quinones*, No. 6:26-CV-599-JSS-LHP, 2026 WL 904687, at *5 (M.D. Fla. Apr. 2, 2026) (declining to require alien to provide monetary security for preliminary injunction prohibiting his transfer).

The Court thereby **DISSOLVES** its "Temporary Restraining Order" (ECF No. 51).[90]

The Court **ORDERS** that, **on August 7, 2026**, Respondents **SHALL INFORM** the Court of:

(1)    whether an IJ has reviewed Petitioner's withholding claims in the manner prescribed by 8 C.F.R. §§ 208.16 and 1208.16; and (if so)

(2)    the result of that review.

The Court further **ORDERS** that the parties **SHALL INFORM** the Court **as soon as possible** of any other material developments in Petitioner's efforts to seek withholding of removal from Mexico.

The Court **DENIES** Petitioner's "Ex-Parte Emergency Motion for Preliminary Injunction or Temporary Restraining Order" (ECF No. 3).

The Court also **DENIES** Petitioner's "Motion to Issue Decision" (ECF No. 45).

The Court **ORDERS** Respondents to transmit this Order to all relevant officers, agents, and employees under their control and with responsibility in this matter.

Finally, the Clerk **SHALL** serve copies of this Order on all named Respondents.

**So ORDERED and SIGNED this 17th day of July 2026.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[90] *See Granny Goose*, 415 U.S. at 443 (explaining that once the court rules on a motion for preliminary injunction, then the temporary restraining order has served its purpose and should be dissolved).

- 20 -