**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **FAUSTINO PABLO PABLO,** | § | |
| | § | |
| *Petitioner*, | § | |
| **v.** | § | |
| | § | |
| **DAVID J. VENTURELLA,** *in his official* | § | |
| *capacity as* Senior Official Performing the | § | |
| Duties of the Director of U.S. Immigration | § | |
| and Customs Enforcement; | § | |
| **DAREN K. MARGOLIN,** *in his official* | § | |
| *capacity as* Director of Executive Office for | § | |
| Immigration Review; | § | **EP-25-CV-00566-DCG** |
| **MARKWAYNE MULLIN***, in his official* | § | |
| *capacity as* Secretary of U.S. Department of | § | |
| Homeland Security; | § | |
| **TODD BLANCHE,** *in his official capacity* | § | |
| *as* Acting Attorney General of the | § | |
| United States; and | § | |
| **WARDEN OF ERO EL PASO CAMP** | § | |
| **EAST MONTANA,** *in his or her official* | § | |
| *capacity*, | § | |
| | § | |
| *Respondents*. | § | |

## MEMORANDUM OPINION AND ORDER

Petitioner Faustino Pablo Pablo ("Petitioner") seeks a writ of habeas corpus in

accordance with 28 U.S.C. § 2241.[1] For more than eight months, Immigration and Customs

Enforcement ("ICE") has detained Petitioner with the purported objective of effectuating his

---

[1] *See generally* Pet., ECF No. 1.

removal from the United States.[2] Petitioner argues that his detention under 8 U.S.C. § 1231(a) is indefinite and thus requires his release from custody.[3] Respondents oppose the Petition.[4]

For the following reasons, the Court **GRANTS** the Petition and **ORDERS** Respondents to release Petitioner from custody.

## I.    BACKGROUND

This case involves an unusually complicated procedural history and set of facts. Having untangled those webs in prior orders, the Court now provides an overarching (if relatively brief) account of these habeas proceedings.

Petitioner is a Guatemalan citizen and native speaker of the Mayan language Mam.[5] In 2012, Petitioner sought refuge in the United States after fleeing violence in his home country.[6] An Immigration Judge ("IJ") ordered Petitioner removed from the country,[7] but later concluded

---

[2] *See infra* notes 13–15 and accompanying text (identifying November 5, 2025 as date of Petitioner's most recent detention).

The Government unlawfully removed Petitioner to Guatemala on November 20, 2025, then returned him to the United States on December 11, 2025. *See infra* notes 18–20. For the purposes of this Order, the Court need not decide whether Petitioner remained "in custody" while he was in Guatemala. *See infra* notes 68–69 (explaining that the presumptive reasonableness of Petitioner's detention expired before the Government re-detained him in 2025).

[3] *See* Pet. at 10–12; 8 U.S.C. § 1231(a)(1)(A) ("Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days . . . .").

[4] *See generally* Am. Resp., ECF No. 34.

[5] IJ Order, ECF No. 1-1, at 2 ("Respondent testified that he was born in Todos Los Santos, Guatemala. He stated that he is Mayan and his native language is Mam.").

[6] *See* Pet. at 7.

[7] *See* IJ Order at 2 (stating that Petitioner's removal order was entered "on March 14, 2013").

That removal order became administratively final on March 3, 2015. *See infra* note 69.

"that [Petitioner] will more likely than not be tortured if he is removed to Guatemala."[8] Accordingly, on November 4, 2013, the IJ granted Petitioner withholding of removal to Guatemala under the Convention Against Torture ("CAT").[9] That order prohibits (*i.e.*, withholds) the Government from removing Petitioner to Guatemala, but not to "third countries"—that is, countries other than Guatemala.[10]

On November 14, 2013, the Government released Petitioner under an order of supervision ("OSUP") while it pursued his removal to a third country.[11] Thereafter, Petitioner remained at liberty in the United States for more than a decade.[12] During a routine check-in on November 5, 2025, however, ICE officers effectively revoked Petitioner's OSUP,[13] re-detained him,[14] and transported him to Camp East Montana in El Paso, Texas.[15]

---

[8] IJ Order at 17.

[9] *Id.* at 19.

[10] *See Johnson v. Guzman Chavez*, 594 U.S. 523, 537 (2021) ("[A] grant of withholding-only relief 'means only that, notwithstanding the order of removal, the noncitizen may not be removed to the designated country of removal, at least until conditions change in that country,' and that 'the noncitizen still may be removed at any time to another country.'" (citing *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020))).

[11] *See* OSUP, ECF No. 1-2, at 1 ("Because the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions . . . .").

[12] *Compare id.* at 1 (recording date of release as November 14, 2013), *with* Pet. at 2 (stating date of re-detention as November 5, 2025).

[13] *Contrast* Pet. at 2, 8 (claiming that "[Petitioner] was not provided with any information about why his OSUP was presumably revoked" when ICE officers detained him on November 5, 2025), *with* Am. Resp. at 3 ("On January 16, 2026, ICE served notice on Petitioner that his order of supervision was revoked."), *and* Notice of Revocation of Release, ECF No. 34-2, at 1 (dated January 16, 2026).

[14] *See* Am. Resp. at 3; Pet. at 8.

[15] *See* Pet. at 1, 4.

Petitioner asked this Court to order his release because, among other reasons, his lawful removal was not "reasonably foreseeable."[16] On November 20, 2025, the Court ordered the Government to show cause and temporarily prohibited it from removing Petitioner from the United States.[17] Before that order reached the docket, however, the Government had "mistakenly" removed Petitioner to Guatemala.[18] The Court therefore ordered the Government to facilitate Petitioner's return,[19] and the Government returned Petitioner to ICE custody in El Paso, Texas on December 11, 2025.[20]

---

[16] *See id.* at 11 (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)); *see also id.* at 10–14 (raising additional claims for relief).

Because the Court concludes below that Petitioner is entitled to habeas relief, it need not address all claims contained in the Petition. *See, e.g.*, *Fleming v. Collins*, 917 F.2d 850, 852 (5th Cir. 1990) ("Because we grant habeas corpus [relief] . . . on the first ground, we need not reach the other claims [petitioner] raises."); *Trotter v. Warden La. State Penitentiary*, 718 F. Supp. 2d 746, 756 (W.D. La. 2010) ("Petitioner is entitled to habeas relief on the claim. The court need not reach the other claims raised by Petitioner." (citation modified)).

[17] O.S.C., ECF No. 4, at 4 ("This Order is not issued as a TRO but instead under the Court's inherent power to preserve its ability to hear the case.").

*But see* Order Vacating Order Prohibiting Removal or Transfer, ECF No. 46, at 4 (vacating the Order to Show Cause to the extent it prohibited the Government from removing or transferring Petitioner).

[18] Resp'ts' Advisory (Nov. 22, 2025), ECF No. 6, at 1 (indicating that the Government removed Petitioner to Guatemala on November 20, 2025); Am. Resp. at 3 (admitting that the Government had "*mistakenly* removed Petitioner to Guatemala" (emphasis added)).

The Court only learned of the "mistake" after Petitioner's counsel filed a motion containing that information. *See* 2d Mot. TRO, ECF No. 5.

[19] *See* 2d Mot. TRO at 6 (moving the Court to "require[e] Respondents to facilitate [Petitioner's] return to the United States"); *see also* Order Granting PI (July 17, 2026), ECF No. 15, at 8 (ordering "Respondents to facilitate the return of [Petitioner] to the United States").

[20] *See* Solares Decl., ECF No. 23-1, at 1.

Having rectified its error, the Government informed Petitioner that it was "actively seeking third country acceptance and intend[ed] to remove Petitioner to Mexico."[21] Petitioner applied for withholding of removal to Mexico (as he had done for Guatemala), and the Government referred Petitioner to an asylum officer to evaluate whether Petitioner had a reasonable fear of persecution or torture in Mexico.[22] On December 27, 2025, the asylum officer concluded that Petitioner was not entitled to withholding of removal to Mexico and issued a "negative fear determination."[23]

Upon receiving the asylum officer's determination,[24] the Government informed the Court that it was prepared to remove Petitioner to Mexico.[25] Since then, the Government insisted at various stages of these proceedings that the only barrier to removal was the Court itself:

> **January 20, 2026**: If the Court lifts the stay of removal, ICE will proceed with removing Petitioner to Mexico . . . . The only impediment to removal is this Court's Order staying removal.[26]

> **April 6, 2026**: If this Court vacated his stay of removal, ERO does not foresee additional procedural hurdles to removing Petitioner to Mexico. Absent any unforeseen circumstances, ERO believes they could effect removal to Mexico within a week of this Court lifting the stay of removal.[27]

---

[21] *See id.* at 2; Am. Resp. at 2.

[22] *See* Am. Resp. at 3.

*See also* 8 C.F.R. § 1208.31(g)(1) (suggesting that aliens must make a threshold showing of reasonable fear of persecution or torture to obtain withholding of removal).

[23] *See* Third Country Screening Notice, ECF No. 35-2 ("You did not establish that it is more likely than not that you will be persecuted or tortured in Mexico").

[24] Resp'ts' Suppl. Br., ECF No. 52, at 2.

[25] *See* Am. Resp. at 3.

[26] *Id.* at 3, 7.

[27] Resp'ts' Status Report (Apr. 6, 2026), ECF No. 43, at 1 (internal citations omitted).

**July 15, 2026**: But for the judicial stay of removal entered in this case, third country removal to Mexico is significantly likely in the reasonably foreseeable future.[28]

Meanwhile, Petitioner asked the Court to maintain the status quo so an IJ could review the asylum officer's negative fear determination.[29]

The Court concluded that Petitioner was constitutionally entitled to present his fear-based claim to an IJ. The Court lifted the order prohibiting the Government from removing or transferring Petitioner,[30] but it enjoined the Government from removing Petitioner until it "allow[ed] him to seek IJ review" under 8 C.F.R. §§ 208.16 and 1208.16.[31] As far as the Court could tell, the aforementioned IJ review was the Government's only "impediment to removal."[32]

The Government scheduled Petitioner to appear before an IJ on July 27, 2026.[33] If the purpose of that hearing was to allow Petitioner to present his fear-based claim to the IJ, the hearing was unsuccessful. The IJ advised a group of individuals (including Petitioner) of their rights in removal proceedings, but he did not address Petitioner's asserted fear of removal to

---

[28] Resp'ts' Suppl. Br. at 2.

[29] 3d Mot. TRO, ECF No. 50, at 8; *id.* at 7–8 (including full list of requested "procedural safeguards").

[30] *See* Order Vacating Order Prohibiting Removal or Transfer, ECF No. 46, at 4 (explaining the Court's "two-step approach to vacating the Removal or Transfer Prohibition").

[31] *See* Order Granting PI (July 17, 2026) at 2–3 ("[O]rdinarily, aliens are entitled to [IJ] review where they claim fear of persecution or torture in the designated country of removal. The applicable procedures are less clear when the Government plans to remove an alien to a country other than the one designated in their removal order." (citations omitted)); *id.* at 14 ("[8 C.F.R. §§ 208.16 and 1208.16] detail the withholding-related procedures that would have applied had the Government designated Mexico for Petitioner's removal during his removal proceedings, and the Court sees no reason that Petitioner shouldn't enjoy those same protections now." (citations omitted)).

[32] *Cf. supra* note 26 and accompanying text.

[33] *See* 3d Mot. TRO at 3; Resp. to 3d Mot. TRO, ECF No. 69, at 1–2.

Mexico.[34] Regardless, Petitioner could not understand the proceedings (there was no Mam interpreter),[35] and Petitioner's attorney was only admitted to the virtual hearing after it ended.[36] The immigration court scheduled Petitioner to appear again on August 5, 2026.[37]

In the interim, the Court held an evidentiary hearing to establish "the steps taken to secure Petitioner's removal to Mexico."[38] In attendance were attorneys for both parties, Petitioner, a Mam interpreter (via telephone), and two ICE officers with personal knowledge of Petitioner's removal process.[39]

At that hearing, the Government revealed that Mexico was not (and had never been) a viable option for third-country removal.[40] The ICE officers testified that the CHNV parole program was the only pathway to remove Petitioner to Mexico,[41] and Petitioner had elected not

---

[34] *See* July 29, 2026 Hr'g Tr., attached to this Order as Exhibit 1, at 3–5 [hereinafter Transcript].

[35] *Id.* at 4.

[36] *Id.* at 4, 5.

Petitioner's counsel stated that when she was eventually admitted to the call, the IJ's legal assistant informed her that "[t]he judge did not think it was important for [her] to be [t]here." *Id.* at 5.

[37] *Id.* at 5, 56.

[38] Order Setting Hr'g, ECF No. 64, at 3; *see also* Order Requiring Resp'ts to Produce Pet'r at Hr'g, ECF No. 67, at 1–3.

[39] *See* Transcript at 2 (introducing counsel); *id.* at 3 (introducing Petitioner); *id.* at 2 (introducing interpreter); *id.* at 15–16, 29 (introducing ICE officers).

[40] *See id.* at 44 ("Mexico will not accept someone who does not agree to go."); *id.* at 23 ("[H]e rejected it.").

[41] *See, e.g.*, *Noem v. Doe*, 145 S. Ct. 1524, 1525 (2025) (Jackson, J., dissenting) ("Under the 'CHNV' program, individuals from . . . conflict-ridden countries receive 'parole' status for up to two years, which allows them to live in the United States and, in some cases, work here lawfully. Parole is discretionary by statute.").

The CHNV program was terminated earlier that year. *E.g.*, *Texas v. United States Dep't of Homeland Sec.*, No. 24-40160, 2025 WL 1661954, at *1 (5th Cir. June 9, 2025) ("On January 20, 2025,

to participate back in December 2025.[42] Thus, the Government would need to "try and find another country besides Mexico."[43] And although the Government understood that "Mexico will not accept someone who does not agree to go,"[44] it had not identified an alternative.[45] The Government has not taken *any* steps since December 2025 to identify another country that would accept Petitioner's removal.[46]

---

President Trump issued an Executive Order directing Secretary Noem to terminate the CHNV Program.").

[42] *Compare id.* at 26 ("Q: And just to make it clear, he's not being processed under [CHNV] because he refused deportation to Mexico? A: Correct."), *with* Pet'r's Status Report (Aug. 5, 2026), ECF No. 71, at 1 (confirming that, as of August 5, 2026, Petitioner still "does not accept removal to Mexico").

[43] *See* Transcript at 38.

One officer testified that if Petitioner refused that program, "his docket officer [would] find[] another pathway to another country that would accept him." *Id.* at 23. The other confirmed that ICE would "try to nominate him again to the CVNH [sic]," at which "point he can refuse, and we'll move on with a third country." *Id.* at 38.

[44] *Id.* at 44.

[45] Counsel for the Government asked the Court for "the opportunity to be able to determine if there's another third country" for Petitioner's removal. Transcript at 49.

The ICE officer who "personally handled" Petitioner's removal case admitted that he had not "done anything since [the Court entered the TRO] as far as researching" or "seek[ing] possible nominations for [Petitioner's removal to] other countries." Transcript at 30. The other officer agreed that "there's nothing going on with him being removed, right now that he has a TRO. So we're not moving on his case." *Id.* at 37.

At the time of the hearing, the Court had enjoined the Government from removing Petitioner without "allow[ing] him to seek IJ review of his withholding claims in the manner prescribed by 8 C.F.R. §§ 208.16 and 1208.16." Order Granting PI (July 17, 2026) at 19. The Court presumes this is the "TRO" described by the witnesses.

[46] *See, e.g.*, Resp'ts' Advisory (Aug. 6, 2026), ECF No. 72, at 1 ("If the IJ concurs with the asylum officer's negative fear determination, ERO will seek to proceed with Petitioner's removal to Mexico pursuant to the CVNH program. If Petitioner refused to comply with the third country removal to Mexico, ERO will collaborate with ERO Headquarters (HQ), Removal and International Operations (RIO) to identify an alternative third country for removal." (internal citations omitted)).

Back in immigration court on August 5, 2026, Petitioner and his attorney learned that "there was no Mam interpreter [available for that hearing]"[47] and that the IJ had not reviewed the asylum officer's determination.[48] The IJ reset the hearing for August 31, 2026.[49]

## II.   DISCUSSION

### A.   Legal Standard

Under 28 U.S.C. § 2241, a person in immigration detention can challenge detention as unlawful by filing a petition for a writ of habeas corpus.[50] To prevail, the petitioner must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[51]

### B.   Relevant Authorities

#### 1.   Immigration and Nationality Act (8 U.S.C. § 1231)

The Immigration and Nationality Act ("INA") provides, *inter alia*, for the "detention, release, and removal of aliens ordered removed."[52] These guidelines are codified at 8 U.S.C. § 1231, which directs the Attorney General to effect removal within ninety days after the removal

---

[47] Pet'r's Status Report (August 5, 2026) at 1.

[48] *Id.*; Resp'ts' Advisory (Aug. 6, 2026) at 1.

[49] Pet'r's Status Report (August 5, 2026) at 1.

[50] 28 U.S.C. § 2241(c); *see also Zadvydas*, 533 U.S. at 699 (citing 28 U.S.C. § 2241(c)(3)).

[51] *Villanueva v. Tate*, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (first quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); and then citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)).

28 U.S.C. § 2241(c).

[52] *See* Immigration and Nationality Act of 1959 § 241, 8 U.S.C. § 1231(a).

order becomes final.[53] The plain text of the statute requires the Government to detain the "alien[]" ordered removed" during those ninety days.[54]

In certain cases, including this one, the Government *may* prolong detention "beyond the removal period."[55] The relevant paragraph, § 1231(a)(6), does not explicitly limit the duration of detention beyond the initial ninety days.[56]

### 2. *Zadvydas v. Davis*

In *Zadvydas v. Davis*, the Supreme Court concluded that § 1231(a)(6) contains an implicit time limit.[57] The Supreme Court "detected ambiguity in the statutory phrase 'may be detained,'" concluding that "while 'may' suggests discretion, it does not necessarily mean unlimited discretion."[58] The Supreme Court further reasoned that "if Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms."[59] Troubled that indefinite detention "would raise serious constitutional concerns," the

---

[53] *Id.* § 1231(a)(1)(A).

[54] *See* 8 U.S.C. § 1231(a)(2)(A) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)); *see also Zadvydas*, 533 U.S. at 683 (2001) ("After entry of a final removal order and during the 90-day removal period, however, aliens must be held in custody . . . .").

[55] 8 U.S.C. § 1231(a)(6) ("An alien ordered removed who is inadmissible under section 1182 of this title . . . may be detained beyond the removal period . . . .").

*See also* IJ Order at 1 (stating that Petitioner was charged under "Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act, as amended: Immigrant without a valid entry document"); 8 U.S.C. § 1182(a)(7)(A)(i)(I) (codifying that section of the INA).

[56] *See* 8 U.S.C. § 1231(a)(6).

[57] *Zadvydas*, 533 U.S. 678.

[58] *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018) (citing *Zadvydas*, 533 U.S. at 697).

[59] *Zadvydas*, 533 U.S. at 697.

- 10 -

Supreme Court "construe[d] the statute to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."[60]

The *Zadvydas* Court surmised that a bright-line rule would be necessary to satisfy "the Nation's need to speak with one voice on immigration"[61] and determined that detention lasting up to *six months* was presumptively reasonable.[62] After six months, and "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,"[63] the burden shifts to the Government to "respond with evidence sufficient to rebut that showing."[64]

### 3.    8 C.F.R. § 241.13

The former Immigration and Nationality Service ("INS") incorporated the central holding of *Zadvydas* into 8 C.F.R. § 241.13. That regulation, which now governs ICE's operations, recognizes that detention under § 1231(a)(6) requires a "significant likelihood that the alien will be removed in the reasonably foreseeable future."[65]

Notably, 8 C.F.R. § 241.13 also places limits on *re*-detention. The regulation instructs that the Government may "revoke an alien's release . . . and return the alien to custody if, on

---

[60] *Id.*

[61] *See id.* at 701.

[62] *Id.* ("We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months.").

[63] *Id.*

[64] *Id.*

[65] *See generally* 8 C.F.R. § 241.13.

account of changed circumstances, the [Government] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."[66]

## C.    Analysis

### 1.    Petitioner's Detention is Not Presumptively Reasonable

To evaluate whether Petitioner is unlawfully detained, the Court must first assess whether his detention is presumptively reasonable.[67] The six-month period identified in *Zadvydas* runs continuously from the date on which a removal order becomes final, irrespective of whether the alien spends all or some of those six months in detention.[68]

Here, Petitioner's removal order became final on March 3, 2015,[69] meaning that his detention under § 1231(a)(6) was presumptively reasonable through September 3, 2015. Because

---

[66] *Id.* § 241.13(i)(2); *see also Kong v. United States*, 62 F.4th 608, 619 (1st Cir. 2023) ("ICE's decision to re-detain a noncitizen . . . who has been granted supervised release is governed by ICE's own regulation requiring (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." (citing 8 C.F.R. § 241.13(i)(2))).

[67] *See supra* Section II.B.

[68] *See Khoury v. Garite*, No. EP-25-CV-00577-DCG, 2026 WL 1179822 at *7–8 (W.D. Tex. Apr. 21, 2026) (concluding that "whether detention is presumptively reasonable must depend on when the removal order becomes final—not how long an alien has spent in detention").

[69] *See* BIA Dismissal, ECF No. 1-1, at 21 (dismissing appeal of Petitioner's removal order on March 3, 2015; *see also* 8 C.F.R. § 1241.1 (explaining how "[a]n order of removal made by the immigration judge at the conclusion of proceedings under section 240 of the Act shall become final")).

the six-month period has long since passed, Petitioner's continued detention is not presumptively

reasonable.

### 2. Petitioner's Removal is Not Significantly Likely in the Reasonably Foreseeable Future

Having determined that Petitioner's detention is not presumptively reasonable, the Court

must now consider whether Petitioner's removal is foreseeable. Under *Zadvydas*, the petitioner

typically bears the initial burden of showing that there is *not* a significant likelihood of removal

in the reasonably foreseeable future.[70] Some courts, however, have concluded that where (as

here) the Government re-detains an alien after revoking their release, 8 C.F.R. § 241.13(i)(2)

applies and requires Respondents to show that such a likelihood of removal does exist.[71]

The Court need not resolve which burden-shifting framework applies to *Zadvydas* claims

involving re-detention. Even if the original *Zadvydas* framework (*i.e.*, the framework that is less

favorable to Petitioner) applied, Petitioner's continued detention is both unreasonable and no

longer authorized under § 1231(a)(6).

### a. *Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future*

Under the burden-shifting framework introduced by *Zadvydas*, Petitioner would first

need to provide good reason to believe that there isn't a significant likelihood of removal in the

---

[70] *See supra* note 63 and accompanying text.

[71] *See, e.g.*, *Escalante v. Noem*, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("[U]pon revocation of supervised release, it is the [Government's] burden to show a significant likelihood that the alien may be removed."); *accord Yan-Ling X. v. Lyons*, 813 F. Supp. 3d 1157, 1164 (E.D. Cal. 2025).

reasonably foreseeable future.[72] While "'[g]ood reason' is not an onerous standard,"[73] it requires more than just "conclusory statements suggesting that he will not be immediately removed."[74]

Petitioner has met his burden. Even though Petitioner's removal order became final in 2015, the Government had not yet identified a third country that would accept Petitioner when it re-detained him more than a decade later.[75] It was only *after* the Government unlawfully removed Petitioner to Guatemala (and returned him to the United States) that the Government informed him that it "intend[ed] to remove [him] to Mexico."[76] And in the *seven months* since Petitioner declined to go to Mexico, the Government has not attempted to identify a viable alternative.[77]

These circumstances provide good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.[78]

---

[72] *Zadvydas*, 533 U.S. at 701.

[73] *See Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *4 (W.D. Tex. Feb. 13, 2026).

[74] *Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006).

[75] *Compare* Pet. at 2 (indicating that the Government re-detained Petitioner on November 5, 2025), *with* Estrada Decl., ECF No. 34-1 (indicating that the Government didn't notify Petitioner of its plans to remove him to Mexico until December 12, 2025).

[76] *See* Am. Resp. at 2; *see also* Estrada Decl. at 2 (indicating that the Government "served [Petitioner] with a Notice of Third Country removal to Mexico" the day after it returned Petitioner to El Paso from Guatemala).

[77] *See supra* notes 44–45 and accompanying text.

[78] *See, e.g.*, *Mogos*, 2026 WL 475079, at *5 (finding that a petitioner's removal wasn't reasonably foreseeable where there was "no stated progress on such removal during the [p]etitioner's continued detention"); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722–23 (W.D. Wash. 2025) (determining that a petitioner carried his burden where "the process for procuring travel documents . . . continue[d] to be uncertain and protracted").

### b.    *Respondents have failed to rebut Petitioner's showing*

For their part, Respondents have offered nothing to suggest that Petitioner's removal is more foreseeable now than any point in the past decade. As they admit, "Mexico will not accept someone who does not agree to go,"[79] and Petitioner has consistently said that he "does not accept removal to Mexico."[80] And even though the Government has known since December 2025 that it needed to "find another country besides Mexico,"[81] it has concededly not done so.[82]

The Government does not plan to start looking in the near future, either.[83] One day after Petitioner confirmed that he still does "not accept removal to Mexico,"[84] the Government explained that it will wait to look into "an alternative third country for removal" in case Petitioner has a sudden change of heart.[85]

Thus, to the extent Respondents argue that this Court has thwarted their progress in removing Petitioner, they are mistaken. The Court's recent Order enjoining the Government from removing Petitioner until it "allow[ed] him to seek IJ review" did *not* prevent the Government from identifying a third country in place of Mexico.[86] Likewise, the Court's initial Order prohibiting the Government from removing or transferring Petitioner did *not* prevent the

---

[79] *See supra* note 44 and accompanying text.

[80] Pet'r's Status Report (Aug. 5, 2026) at 1.

[81] *See supra* note 43 and accompanying text.

[82] *See supra* note 45 and accompanying text.

[83] Resp'ts' Advisory (Aug. 6, 2026) at 1.

[84] Pet'r's Status Report (Aug. 5, 2026) at 1.

[85] Resp'ts' Advisory (Aug. 6, 2026) at 1.

[86] *See supra* notes 31–32.

Government from pursuing or planning Petitioner's removal to a third country.[87] Even so, the

Court vacated that Order nearly a month ago, and the Government *still* has inched no closer to

removing Petitioner.[88]

Section 1231(a) does not authorize Respondents to detain Petitioner indefinitely while

they pursue his removal.[89] Under these circumstances, Petitioner's continued detention is

unreasonable and no longer authorized by statute.[90]

### D.    Scope of Relief

Because Petitioner's continued detention is no longer authorized, the Court will order his

release.[91] *Zadvydas* counsels that "the alien's release may and should be conditioned on any of

the various forms of supervised release that are appropriate in the circumstances."[92] The Court

directs Respondents to release Petitioner under a form of supervised release that accounts for his

history of compliance (or non-compliance) with his prior OSUP(s).

---

[87] *See supra* note 17.

[88] *See* Order Vacating Order Prohibiting Removal or Transfer at 4 (vacating prohibition on Petitioner's removal or transfer effective "July 10, 2026 at 11:59 p.m. Mountain Time").

[89] *See Zadvydas*, 533 U.S. at 689.

[90] *Id.* at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute.").

[91] *See id.* (contemplating an alien's release where detention is no longer authorized).

[92] *Id.* at 700.

Respondents may continue to facilitate removal while Petitioner is released under supervision. However, Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) in accordance with the procedures set forth under 8 C.F.R. §§ 241.4(*l*), 241.13(i).[93]

## III.    CONCLUSION

For the foregoing reasons, the Court finds that Petitioner Faustino Pablo Pablo has shown by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."[94]

The Court therefore **GRANTS** Petitioner Faustino Pablo Pablo's "Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief" (ECF No. 1).

The Court thereby **ORDERS** Respondents to **RELEASE** Petitioner from immigration detention **UNDER SUPERVISION on or before Monday, August 10, 2026**.

The Court **FURTHER ORDERS** that Respondents shall notify the Court of Petitioner's release **by 5:00 PM Mountain Time on Tuesday, August 11, 2026**.

The Court **FURTHER ORDERS** that Respondents may only re-detain Petitioner under the authority of Section 1231(a)(6) if:

(1)    on account of changed circumstances, there is a significant likelihood that Petitioner will be removed in the reasonably foreseeable future;

(2)    after an evidentiary hearing, the Government determines that Petitioner is a risk to the community; or

(3)    after an evidentiary hearing, the Government determines that Petitioner is unlikely to comply with the order of removal.

---

[93] *See* 8 C.F.R. § 241.4(*l*) (identifying the process by which the Government may revoke an alien's OSUP where the alien has violated their conditions of release); 8 C.F.R. § 241.13(i)(3) (identifying the process by which the Government may revoke an alien's OSUP to execute removal).

[94] *See supra* note 51 and accompanying text.

The Court **REMINDS** Petitioner that unless the immigration court allows him to appear by Zoom, telephone, or other remote means, he should prepare to attend his August 31, 2026 hearing in person.[95]

The Court further **DENIES** Petitioner's "Motion for Leave to Serve Discovery Request" (ECF No. 61)—in which Petitioner seeks discovery regarding the Government's plans to remove him to Mexico. Because the record indicates that Mexico is not a viable option for Petitioner's removal,[96] the Court finds that there isn't good cause to authorize Petitioner's requested discovery.[97]

For that same reason, the Court **DENIES** Petitioner's "Motion for Temporary Restraining Order" (ECF No. 63)—in which he seeks an order "prohibiting Respondents from deporting him [to Mexico] while th[e] Court determines the lawfulness of his removal to Mexico"—as **MOOT**.[98]

---

[95] *See supra* note 49 and accompanying text.

[96] *See supra* Section II.C.

[97] *See, e.g.*, *Sagastizado v. Noem*, 5:25-cv-00104 at 2 (S.D. Tex. Aug. 28, 2025) ("Under Habeas Rule 6, a petitioner is only entitled to habeas discovery upon (1) demonstrating 'good cause' and (2) specifying the discovery needed.").

[98] *See Landscape Consultants of Texas, Inc. v. City of Houston, Texas*, No. CV H-23-3516, 2026 WL 2170880, at *7 (S.D. Tex. July 28, 2026) ("A claim is rendered moot when a "case or controversy" no longer exists between the parties" (citing *Brinsdon v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 345 (5th Cir. 2017))); *see also, e.g.*, *Arnold v. Dretke*, No. 3-03-CV-2988-G, 2004 WL 302307, at *1 (N.D. Tex. 2004) (denying motion because it "d[id] not present a justiciable case or controversy"), *report and recommendation adopted by* No. 3-03-CV-2988-G, 2004 WL 906280 (N.D. Tex. Mar. 9, 2004).

The Court **GRANTS** Petitioner's "Motion to Enforce Order" (ECF No. 66) **IN PART** to the extent he seeks an order requiring Respondents to allow Petitioner's counsel to attend his immigration court hearings.[99]

The Court **DENIES** Petitioner's "Motion to Enforce Order" (ECF No. 66) **IN PART** to the extent he seeks an order requiring Respondents to "[h]ave a Mam interpreter at [Petitioner's] August 5th Immigration Court Hearing."[100] That hearing already took place, so Petitioner's request for a Mam interpreter is moot.[101]

Finally, now that Petitioner has obtained the habeas relief to which he is entitled, there appears to be nothing further for the Court to do in this case. The Court therefore **CLOSES** the above-captioned case.

**So ORDERED and SIGNED this 7th day of August 2026.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[99] *See* 8 U.S.C. § 1362 ("In any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose.").

[100] *See id.*

[101] *See supra* note 98 and accompanying text.