**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **FAUSTINO PABLO PABLO,**<br><br>***Petitioner*,**<br>**v.**<br><br>**DAVID J. VENTURELLA,** *in his official capacity as* Senior Official Performing the Duties of the Director of U.S. Immigration and Customs Enforcement;<br>**DAREN K. MARGOLIN,** *in his official capacity as* Director of Executive Office for Immigration Review;<br>**MARKWAYNE MULLIN**, *in his official capacity as* Secretary of U.S. Department of Homeland Security;<br>**TODD BLANCHE,** *in his official capacity as* Attorney General of the United States; and<br>**WARDEN OF ERO EL PASO CAMP EAST MONTANA,** *in his or her official capacity*,<br><br>***Respondents*.** | § | **EP-25-CV-00566-DCG** |

**ORDER DENYING MOTION TO ENFORCE JUDGMENT**

The Court previously granted Petitioner Faustino Pablo Pablo's Petition for a Writ of Habeas Corpus (ECF No. 1) and ordered Respondents to "release Petitioner under a form of supervised release that accounts for his history of compliance (or non-compliance) with his prior [Order(s) of Supervision ("OSUPs")]."[1] Petitioner has since moved the Court to "enforce" its prior order by modifying the terms of his supervised release.[2] For the reasons stated below, the

---

[1] *See* Mem. Op. & Order, ECF No. 74, at 16.

[2] *See* Mot. Enforce, ECF No. 77.

Court **DENIES** Petitioner's "Motion to Enforce Grant of Habeas Corpus" (the "Motion") (ECF No. 77).

## I. BACKGROUND

Petitioner Faustino Pablo Pablo is a Guatemalan citizen with a removal order dating back to 2013.[3] The Government wasn't able to remove him at that time, so it released Petitioner under an Order of Supervision (the "First OSUP").[4]

In November 2025, the Government revoked the First OSUP and detained him to execute his removal.[5] Over eight months later, however, the Government still hadn't identified a viable option for Petitioner's removal.[6] The Court therefore concluded that Petitioner's removal was not reasonably foreseeable.[7]

*Zadvydas v. Davis* instructs that where removal is not "reasonably foreseeable, the court should hold continued [post-removal order] detention unreasonable" and order the alien's release.[8] That case further instructs that "the alien's release may and should be conditioned on

---

[3] *See* Pet., ECF No. 1, at 4 ("Petitioner . . . is a citizen of Guatemala."); IJ Order, ECF No. 1-1, at 2 (stating that Petitioner was ordered removed "on March 14, 2013").

[4] *See* 1st OSUP, ECF No. 1-2, at 1 ("Because the agency has not effected your deportation or removal during the period prescribed by law, it is ordered that you be placed under supervision and permitted to be at large under the following conditions . . . .").

[5] *See* Pet. at 8; Am. Resp., ECF No. 34, at 3.

[6] *See* Mem. Op. & Order at 13–14.

[7] *See id.* at 14–16.

[8] *Zadvydas v. Davis*, 533 U.S. 678, 699–700 (2001).

any of the various forms of supervised release that are appropriate in the circumstances."[9] Thus, having determined that Petitioner's removal wasn't reasonably foreseeable, this Court ordered Respondents "to release Petitioner under a form of supervised release that accounts for his history of compliance (or non-compliance) with his prior [Order(s) of Supervision]."[10]

On August 8, 2026, the Government released Petitioner under a new Order of Supervision (the "Second OSUP").[11] Unlike the First OSUP, the Second OSUP requires Petitioner to:

(1) obtain approval from Immigration and Customs Enforcement before traveling outside of Carlsbad, California for more than 48 hours;[12] and

(2) wear an ankle monitor.[13]

---

[9] *Id.* at 700.

*See also* 8 U.S.C. § 1231(a)(3) (providing that OSUPs must contain "reasonable written restrictions on [an] alien's conduct or activities").

[10] *See* Mem. Op. & Order at 16.

[11] *See* Aug. 11, 2026 Advisory, ECF No. 75; 2d OSUP, ECF No. 77-2.

[12] *See* Mot. Enforce at 1–2.

*Compare* 1st OSUP at 1 (prohibiting Petitioner from traveling "outside [the] ***Contiguous Territory*** for more than 48 hours" without prior Government approval (emphasis added)), *with* 2d OSUP at 1 (prohibiting Petitioner from traveling "outside ***Carlsbad, California*** for more than 48 hours" without prior Government approval (emphasis added)).

[13] *See* Mot. Enforce at 2; 2d OSUP at 1 (indicating that Petitioner "will be subject to electronic monitoring").

Although the First OSUP also provided for "[e]lectronic monitoring," *see* 1st OSUP at 3, it doesn't appear that the Government enforced that requirement. *See* Mot. Enforce at 2 (indicating that Petitioner "has never worn an ankle monitor previously").

Petitioner challenges those conditions of release as:

(A) unnecessary "given his 12-year history of compliance with the [First] OSUP"; and

(B) contrary to the Court's instruction that Respondents release Petitioner under terms that account for his history of compliance with his First OSUP.[14]

He therefore moves the Court to order Respondents to "increase the distance he can travel from his home [without ICE permission] and remove his ankle monitor."[15]

## II. DISCUSSION

The Court denies Petitioner's Motion. *First*, Petitioner didn't cite any authority indicating that the Court can or should grant the relief he seeks.[16] The Court could deny the Motion on that basis alone.[17]

*Second*, although the Court may have jurisdiction to consider the Motion,[18] Petitioner is not entitled to the relief he seeks. 8 U.S.C. § 1231 authorizes the Government to detain and

---

[14] *See* Mot. Enforce at 1–2.

[15] *Id.* at 2.

[16] *See generally id.*

*See also* W.D. TEX. L.R. CV-7(c) ("All motions must state the grounds therefor and cite any applicable rule, statute, or other authority justifying the relief sought.").

[17] *See, e.g.*, *Rodriguez v. Home Depot U.S.A., Inc.*, No. W-16-CV-00398-RP-JCM, 2018 WL 2996903, at *4 (W.D. Tex. May 21, 2018) (concluding that a movant's failure "to cite to any legal authority justifying its position"—as Local Civil Rule 7 requires—was an "independent reason[ ]" to deny a motion).

[18] *See, e.g.*, *Fazel v. Lyons*, No. 5:26-CV-00692, 2026 WL 1786772, at *1 (S.D. Tex. June 22, 2026) (concluding that habeas jurisdiction under 8 U.S.C. § 2241 extends to challenges to conditions of release); *Merlan v. Holder*, 667 F.3d 538, 539 (5th Cir. 2011) (per curiam) (citation modified) ("Although an applicant need not be in actual physical custody to pursue a habeas action, there must be some type of restraint on the liberty of a person.").

release aliens who have been ordered removed.[19] Where (as here) the Government releases an alien from post-removal order detention, Section 1231(a)(3) provides that "the alien . . . shall be subject to supervision under regulations prescribed by the Attorney General."[20] Section 1231(a)(3) further provides that those regulations must require the alien "to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien."[21]

8 C.F.R. §§ 241.5 and 241.13 are two such regulations that govern the conditions of post-removal-order supervision. 8 C.F.R. § 241.5(a)(4) provides that "[OSUPs] shall specify [an alien's] conditions of supervision including, but not limited to, . . . [a] requirement that the alien obtain advance approval of travel beyond previously specified times and distances."[22] The Second OSUP does just that—requiring Petitioner to obtain approval before traveling for more than 48 hours outside Carlsbad, California.[23]

8 C.F.R. § 241.13(h)(1), meanwhile, authorizes the Government to "include any other conditions [in an OSUP] that the [Government] considers necessary to . . . guarantee the alien's compliance with the order of removal."[24] Other courts have concluded (and this Court agrees)

---

[19] *See Zadvydas*, 533 U.S. at 688–89.

[20] 8 U.S.C. § 1231(a)(3).

[21] *Id*. § 1231(a)(3)(D).

[22] 8 C.F.R. § 241.5(a)(4).

[23] *See* 2d OSUP at 1.

[24] *See* 8 C.F.R. § 241.13(h)(1).

that 8 C.F.R. § 241.13(h)(1) authorizes the use of ankle monitors where the Government deems it necessary to ensure removal.[25]

Petitioner nonetheless claims that both conditions are "overly restrictive."[26] Courts that have considered this type of challenge to post-removal orders of supervision have "given administrative authorities wide latitude to impose such orders."[27] That's because "'decisions made by the [Government] in the area of immigration and naturalization' are subject to 'a narrow standard of review' that is equivalent to rational basis scrutiny."[28] "Rational basis review creates a strong presumption of constitutionality; the challenged government action 'need only bear a rational relation to a legitimate governmental purpose.'"[29] In this case, the purpose of the conditions that Petitioner challenges is to assure that he can be accounted for and doesn't abscond pending his removal.[30]

---

[25] *See, e.g.*, *Fazel*, 2026 WL 1786772, at *2.

[26] *See* Mot. Enforce at 1.

[27] *Zavala v. Prendes*, No. 3-10-CV-1601-K-BD, 2010 WL 4454055, at *1 (N.D. Tex.) (citing *Kalombo v. Shanahan,* No. 07–CIV–11350–PKC, 2009 WL 1788589, at *5 (S.D.N.Y. Jun. 23, 2009)), *report and recommendation adopted*, No. 3:10-CV-1601-K, 2010 WL 4627736 (N.D. Tex. Nov. 1, 2010).

[28] *United States v. Ferreira*, 275 F.3d 1020, 1025 (11th Cir. 2001) (quoting *Mathews v. Diaz*, 426 U.S. 67, 81 (1976)).

*See also Fazel*, 2026 WL 1786772, at *3 (applying rational basis review to an alien's challenge to the conditions set forth in their OSUP); *Gozo v. Mayorkas*, No. 1:23-CV-159, 2024 WL 2027510, at *4 (S.D. Tex. Mar. 4, 2024) (same).

[29] *Smith v. City of Bastrop*, No. 1:19-CV-1054-RP, 2020 WL 4018594, at *6 (W.D. Tex.) (quoting *Duarte v. City of Lewisville*, 858 F.3d 348, 354 (5th Cir. 2017)), *report and recommendation adopted*, No. 1:19-CV-1054-RP, 2020 WL 7672317 (W.D. Tex. Sept. 2, 2020).

[30] *See Zavala*, 2010 WL 4454055, at *2; *see also* 8 C.F.R. § 241.13(h) (authorizing the Government to subject aliens to conditions "necessary to . . . guarantee the alien's compliance with the order of removal").

*See also Yusov v. Shaughnessey,* 671 F. Supp. 2d 523, 530 (S.D.N.Y. 2009) ("The goals of reducing the number of absconding aliens and accounting for and being able to produce any alien who

Beginning with the travel restriction, Petitioner argues that requiring him to seek approval before spending more than 48 hours outside of Carlsbad, California will "negatively impact his ability to visit family out of state or take any trips with his children."[31] This argument ignores that the Court's grant of habeas relief wasn't a license for Petitioner to "live at large" in the United States.[32] In fact, *Zadvydas*—*i.e.*, the case on which the Court relied in granting Petitioner habeas relief—even cites 8 C.F.R. § 241.5 as "establishing [the] conditions of release" that aliens like Petitioner must observe.[33] Here, the Government implemented 8 C.F.R. § 241.5(a)(4) by requiring Petitioner to seek approval before spending more than 48 hours outside of the city in which he resides.[34] The Court concludes that this condition is rationally related to the purpose of ensuring that Petitioner can be located if removal becomes practicable.

As for the ankle monitor, Petitioner argues that the monitor detracts from his ability to work (because it prevents him from wearing work boots) or enjoy time with his family (because

---

becomes removable are legitimate government interests . . . ." (citation modified)), *aff'd sub nom. Yusov v. Shaughnessy*, 396 F. App'x 780 (2d Cir. 2010) (affirming the district court decision "for substantially the same reasons stated by the district court in its thorough opinion").

[31] *See* Mot. Enforce at 2.

[32] *See Zadvydas*, 533 U.S. at 696.

*See also infra* note 36 and accompanying text.

[33] *See Zadvydas*, 533 U.S. at 698 (citing 8 C.F.R. § 241.5).

Although the Government has amended 8 C.F.R. § 241.5 multiple times, the requirement that the Government impose travel restrictions via OSUPs existed when the Supreme Court decided *Zadvydas*. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312-01, 10378–79 (Mar. 6, 1997) (codified at 8 C.F.R. § 241.5) ("[OSUPs] shall specify conditions of supervision including, but not limited to, . . . [a] requirement that the alien obtain advance approval of travel beyond previously specified times and distances.").

[34] *See* 2d OSUP at 1; *see also supra* notes 22–23 and accompanying text.

he can't spend time in the water while wearing the ankle monitor).[35] While the Court is sympathetic to Petitioner's concerns, the Government isn't required to use "the least burdensome means to accomplish its [immigration] goal[s]."[36] Instead, the Government must merely have a rational basis for its chosen means.[37] The Court concludes (like other courts have) that Petitioner's ankle monitor requirement bears a rational relationship to the Government's interest in assuring that he complies with his removal order.[38]

Simply put, the Second OSUP's conditions (1) implement statutory and regulatory commands; and (2) pass constitutional muster. Though Petitioner may dispute whether the Second OSUP properly accounts for his history of compliance with his First OSUP,[39] he hasn't provided (and the Court hasn't identified) a legal justification to set aside the challenged conditions.[40]

---

[35] *See* Mot. Enforce at 2.

[36] *See Demore v. Kim*, 538 U.S. 510, 528 (2003).

[37] *See supra* notes 27–29 and accompanying text.

[38] *See Fazel*, 2026 WL 1786772, at *2 (quoting *Gozo*, 2024 WL 2027510, at *4).

*See also, e.g.*, *Zavala*, 2010 WL 4454055, at *2 ("[R]equiring petitioner to wear an ankle monitor is a reasonable restriction that assures that petitioner can be accounted for and does not abscond pending removal."); *Ahmed v. Tate*, No. 4:19-CV-4889, 2020 WL 3402856, at *4 (S.D. Tex. June 19, 2020) (citing cases).

[39] *See supra* note 14 and accompanying text.

[40] Despite Petitioner's claim that he "always complied with" the First OSUP, *see* Mot. Enforce at 1, the record shows that Petitioner failed to comply with his First OSUP to the extent it commanded him not to commit any crimes. *See* 1st OSUP at 3 (prohibiting Petitioner from "commit[ing] any crimes while on" the First OSUP); Pet. at 8 (indicating that Petitioner "was convicted of California Vehicle Code § 23152b and 23578," which criminalize driving with a blood alcohol content in excess of specified limits).

## III. CONCLUSION

For the reasons stated above, the Court **DENIES** Petitioner's "Motion to Enforce Grant of Habeas Corpus" (ECF No. 77).

Now that the Senate has confirmed Respondent Todd Blanche as Attorney General of the United States,[41] the Court further **DIRECTS** the Clerk of Court to **REMOVE** the word "Acting" from Attorney General Blanche's title on CM/ECF.

**So ORDERED and SIGNED this 18th day of August 2026.**

**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

[41] *See, e.g.*, Riley Rogerson et al., *Senate confirms Blanche as attorney general*, Politico (Aug. 8, 2026, at 4:33 ET), https://www.politico.com/live-updates/2026/08/07/congress/todd-blanche-senate-confirmation-01029751 (last visited Aug. 18, 2026).